Michael J. Stortz (SBN 139386)
Michael.Stortz@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Avril G. Love (SBN 237028)
Avril.Love@klgates.com
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant
TRUSPER, INC. d/b/a MUSELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIA RAMIREZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUSPER, INC. d/b/a MUSELY,<br><br>Defendant. | Case No. 5:24-cv-02012-EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 19, 2024<br>Time: 9:00 a.m.<br>Dept: Courtroom 4 – 5th Floor<br>Judge: Hon. Edward J. Davila<br>Trial Date: TBD<br>Date Action Filed: April 2, 2024 |

**NOTICE OF MOTION**

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 19, 2024 at 9:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Edward J. Davila, in Courtroom 4, 5th Floor of the above-entitled court located at 280 South 1st Street, San Jose, California, Defendant Trusper, Inc., d/b/a Musely ("Musely"), by and through its counsel of record, will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for an order that: (a) compels Plaintiff Elia Ramirez ("Plaintiff") to resolve her claims in individual arbitration, pursuant to the arbitration provision in the Musely Participant Agreement; and (b) stays this action pending final resolution of the arbitration.

This Motion is based upon the this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the accompanying Declaration of Steven Buchanan and exhibits thereto, as well as all papers and pleadings on file or deemed to be on file herein, and such argument as may be presented at hearing.

Dated: May 24, 2024

K&L GATES LLP

By: */s/ Michael J. Stortz*
Michael J. Stortz
Avril G. Love

Attorneys for Defendant
TRUSPER, INC. d/b/a MUSELY

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Customers, Including Plaintiff, Enter Into A Continuing Relationship With Musely for Skincare Treatment. ..... 1

B. Plaintiff and Musely's Relationship Is Governed by the Musely Participant Agreement. ..... 3

C. Plaintiff Agreed to The Musely Participant Agreement, As Part of Her Continuing Relationship with Musely. ..... 4

D. The Participant Agreement Contains an Arbitration Provision. ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. The Federal Arbitration Act Governs the Parties' Arbitration Agreement. ..... 7

B. Plaintiff and Musely Agreed To Binding Individual Arbitration. ..... 7

C. Any Disputes As To Scope Are Delegated to the Arbitrator. ..... 10

V. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ........................................................................................................ 7

*Am. Express Co. v Italian Colors Rest.*,
570 U.S. 228 (2013) ........................................................................................................ 6

*Ambler v. BT Americas Inc.*,
964 F. Supp. 2d 1169 (N.D. Cal. 2013) ..................................................................... 6, 7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................................................................ 6

*B.D. v. Blizzard Entertainment, Inc.*,
76 Cal. App. 5th 931 (2022) ....................................................................................... 8, 9

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ........................................................................................................ 7

*Circuit City Stores v. Najd*,
294 F.3d 1104 (9th Cir. 2002)......................................................................................... 10

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......................................................................................................... 7

*Keebaugh v. Warner Bros. Ent. Inc.*,
No. 22-55982, 2024 WL 1819651 (9th Cir. Apr. 26, 2024) ...................................... 7, 8, 9, 11

*Lee v. Donotpay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. July 20, 2023)............................................................. 10

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F. 2d 1458 (9th Cir. 1983)........................................................................................ 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................................................................................... 11

*Norcia v. Samsung Telecomm. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017)........................................................................................... 7

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....................................................................................... 6, 10

*In re Ring LLC Priv. Litig.*,
No. CV1910899MWFRAOX, 2021 WL 2621197 (C.D. Cal. June 24, 2021) ....................... 10

*Sanchez v. Valencia Holding Co.*, LLC, 61 Cal. 4th 899 (2015) .......... 10

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .......... 8

*Smith v. Spizziri*, No. 22-1218, 2024 WL 2193872 (U.S. May 16, 2024) (2024) .......... 6

*Snow v. Nectar Brand, LLC*, No. 222CV07912MCSMRW, 2023 WL 2558544 (C.D. Cal. Mar. 2, 2023) .......... 9

**Statutes**

9 U.S.C. § 2 .......... 7

9 U.S.C. § 3 .......... 6

9 U.S.C. §§ 1-16 .......... 1, 5, 6, 7

Cal. Civ. Proc. § 1280 et seq. .......... 5

Cal. Civ. § 1556 .......... 7

Cal. Civ. § 56.10 .......... 1

Cal. Penal Code § 631 .......... 1

Fed. R. Civ. P. 17(c) .......... 7

**Other Authorities**

California Constitution .......... 1

Commercial Arbitration Rules and Mediation Procedures (https://adr.org/sites/default/files/Commercial%20Rules.pdf) .......... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Elia Ramirez ("Plaintiff") alleges that she purchased a prescription medication on the website of Defendant Trusper, Inc. d/b/a Musely ("Musely") to treat dark brown spots on the skin. Compl., ¶ 5. Prior to purchase, Plaintiff alleges that she provided information online on the Musely website regarding her skin condition "for the purpose of having a doctor write a prescription for the medication she purchased[.]" *Id.* After her purchase, Plaintiff alleges that she was able "[t]hrough the Musely app," to check in with Musely's "eNurse" in order "to receive effective treatment." *Id.,* ¶ 22. Although Plaintiff has had an active Facebook account for several years, she claims that Musely assisted Meta[1] in allegedly intercepting her communications through deployment of software code, known as the Facebook pixel, on the Musely website. *Id.,* ¶¶ 6, 7. Based on these allegations, Plaintiff asserts claims under the California Invasion of Privacy Act (California Penal Code § 631), California Confidentiality of Medical Information Act (California Civil Code § 56.10), and the California Constitution. See *id.* ¶¶ 79-107.

Although Plaintiff's claims lack merit for several reasons, they do not belong in court because Plaintiff has agreed to resolve them in arbitration. Musely's services to Plaintiff are governed by the Musely Participant Agreement ("Participant Agreement"), which contains a binding arbitration provision that requires resolution of her claims in individual arbitration. Pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), the Court should order Plaintiff's claims to arbitration, and stay this action pending final resolution of the arbitration.

## II.

## BACKGROUND

### A. Customers, Including Plaintiff, Enter Into A Continuing Relationship With Musely for Skincare Treatment.

Musely is a skincare company that connects people to prescription and non-prescription

---

[1] Plaintiff alleges that Facebook, Inc. changed its name to Meta Platforms, Inc. and refers to them collectively as "Meta." See Compl., p. 1, fn. 1.

treatment for skin conditions through a nationwide telehealth service. *See* accompanying Declaration of Steven Buchanan ("Buchanan Decl."), ¶ 2. Musely offers oral and topical medications to customers throughout the United States by connecting them to doctors in their states of residence via the Musely platform, accessible at the Musely website (www.musely.com) and the Musely smartphone application. *Id.,* ¶¶ 3, 4.

Many Musely customers seek treatment for chronic skin conditions – such as melasma, hair loss, and rosacea – that they have already treated unsuccessfully. *Id.,* ¶ 5. Plaintiff alleges that she purchased a Musely treatment for "dark brown spots." Compl., ¶ 5. Musely's account information for Plaintiff reflects that she purchased a Musely treatment while visiting the Musely website on June 6, 2023. Buchanan Decl., ¶¶ 18, 23, 24.

Musely's treatments must be used consistently over time, and often on an ongoing basis, to achieve the desired results. *Id.,* ¶ 4, 9. The time necessary to achieve results may vary, depending on the prescribed treatment and the customer's reported skin condition. *Id.,* ¶ 9. For example, a treatment for dark spots, also known as melasma, could take six to eight weeks before a customer sees improvements. *Id.,* ¶ 4. On the other hand, a treatment for hair loss requires three to six months before a customer will typically see a reduction in hair loss, and six to twelve months before a customer will typically see hair regrowth. *Id.* Musely informs customers to expect that ongoing treatment will be needed for conditions such as dark spots. *Id.,* ¶ 9.

To support the consistency that is essential to successful treatment, Musely's telehealth platform is designed to allow customers to engage with Musely on an ongoing basis. *Id.,* ¶ 7. Thus, when a customer purchases a Musely prescription treatment, they receive a prescription valid for one year, as well as ongoing access to their prescribing doctor through Musely's Message Center, and automated check-ups through Musely's eNurse program. *Id.,* ¶¶ 7, 8. Musely also has a community forum where consumers may post their before and after photos to show progress with their treatments. *Id.,* ¶ 10.

In addition, Musely's eNurse automated check-up program follows customers' skin condition for 60 days. *Id.*, ¶ 7. Customers who participate in Musely's automated check-up program must consistently use their treatment for 60 days and then are entitled to receive a refund

if they are not satisfied with their results. *Id.*, ¶¶ 7, 10. In making a purchase, Plaintiff agreed to complete the eNurse check-up program by clicking a box that states, "Yes, I understand and will use Musely eNurse for 60 days." *Id.*, ¶¶ 16, 23.

**B. Plaintiff and Musely's Relationship Is Governed by the Musely Participant Agreement.**

Because Musely's service typically requires a doctor's prescription, customers must first enroll in Musely by creating a customer account and providing information relevant to finding a physician, before making any purchase or even advancing to Musely's shopping cart. *Id.,* ¶ 12. Customers establish a Musely account through a three-step enrollment process, in which they provide information to Musely, including an email address, an account password, their legal name, date of birth, and other basic information. *Id.*, ¶ ¶ 12, 14, 15.

Before Musely elicits information from customers in the enrollment process, it first provides them with information as to its telehealth service and access to the contractual terms that govern the relationship. The enrollment process begins when a customer who adds a product to the shopping cart clicks a "Next" button and is prompted to "Find My Doctor" on a Telehealth Consent screen. *Id.*, ¶ ¶ 12, 13. The Telehealth Consent screen is the first of a three-step enrollment process. *Id.,* Ex. 2.

In this first step, the customer is prompted to "Enter your home state:" into a boxed field. *Id.*, ¶ 13. Directly under the boxed field is a pink pre-checked box beside the statement, "I agree to the terms of Telehealth Consent." *Id.* The underlined portion of the "I agree" statement is a hyperlink that, if clicked, opens a pop-up titled "Consent to Telehealth Services." *Id.*, Ex. 3. The Consent to Telehealth Services pop-up contains just five sentences, the last two of which state, "For Musely's full Telehealth Terms and Conditions please visit the terms page or click on the link provided below. By consenting to Telehealth you are agreeing to our full terms and conditions." *Id.* The underlined reference to the "terms page" is a hyperlink that opens Musely's Participant Agreement. *Id.*, Ex. 4.

In the second step of its enrollment process, Musely provides a second opportunity to view the Participant Agreement, as part of opening the customer's Musely account. In the second

step of the enrollment process, the customer is prompted to create an account to "communicate with your doctor using our secure system." *Id.*, ¶ 14. The customer provides an email address, establishes a password, and confirms their legal name. *Id.* The customer is presented with a statement that reads, "By signing up, you agree to Musely's Privacy Policy and Terms of Use" before clicking on a button that says "Create Account." *Id.* The underlined reference to the "Terms of Use" is a hyperlink to a table of contents where, once again, the customer can click on the Participant Agreement. *Id.*

### C. Plaintiff Agreed to The Musely Participant Agreement, As Part of Her Continuing Relationship with Musely.

Plaintiff enrolled in Musely's services repeatedly over the course of four visits to Musely's website in 2022 and 2023. Over the course of those visits, Plaintiff received notice of and access to the Participant Agreement on five separate occasions, and Plaintiff consented to the Participant Agreement on each occasion. *Id.*, ¶¶ 28, 29.

Plaintiff first visited Musely's website and placed a product in the shopping cart on July 8, 2022. *Id.*, ¶ 22. During her first visit, Plaintiff completed the enrollment process, including advancing through the Telehealth Consent screen (step one, above) and creating her account (step two) – thereby receiving notice and access to the Participant Agreement twice, and twice consenting to the Participant Agreement. *Id.*

Plaintiff did not, however, make a purchase on July 8, 2022. *Id.* She returned to Musely's website the following day on July 9, 2022 and initiated the enrollment process again. *Id.*, ¶¶ 20, 22. Plaintiff was not required to re-create her Musely account (step two), as she had already created that account during her first visit the previous day. *Id.*, ¶ 22. However, Plaintiff did receive further notice of and access to the Participant Agreement at the Telehealth Consent screen (step one) during her second visit on July 9, 2022. *Id.* Plaintiff did not make a purchase during her second visit. *Id.*

In 2023, Plaintiff visited Musely's website two more times. Plaintiff visited Musely's website a third time on April 16, 2023. *Id.* Again, she received notice of and access to the Participant Agreement a fourth time at the Telehealth Consent screen (step one), but did not make

a purchase during this third visit. *Id.*

Less than two months later, however, Plaintiff did purchase a treatment for dark spots during her fourth visit to the Musely website on June 6, 2023. Compl., ¶ 5; Buchanan Decl., ¶ 24. Plaintiff again received notice of and access to the Participant Agreement during this fourth visit, as she had on each prior visit, when she initiated the enrollment process and encountered the Telehealth Consent screen (step one, above). Buchanan Decl., ¶¶ 22, 23, 29.

As Plaintiff acknowledges in her Complaint, she completed an online questionnaire prior to making her purchase "for the purpose of having a doctor write a prescription for the medication she purchased[.]" Compl., ¶ 5. However, Plaintiff could not have accessed the questionnaire – or made any purchase – without first having created her Musely account during her prior visit on July 8, 2022. Buchanan Decl., ¶¶ 12-17. Nor could Plaintiff have accessed the questionnaire without first having provided her consent on the Telehealth Consent screen during her June 6, 2023 visit. *Id.*

Following Plaintiff's June 6, 2023 purchase, Musely sent Plaintiff an email the same day, confirming the purchase and providing her with her order number. *Id.*, ¶ 25, Ex. 11. Because the treatment selected by Plaintiff required that she upload a picture to the website to facilitate doctor review, Musely reminded her to "Please upload your photos for the doctor to review the information." *Id.* The email provided a button through which Plaintiff could "Complete [her] Online Doctor Visit." *Id.* Plaintiff uploaded the requested photo on July 1, 2023, according to Musely's records. *Id.*, ¶¶ 26, 27, Ex. 12.

**D. The Participant Agreement Contains an Arbitration Provision.**

Section 7.1 of the Participant Agreement contains the following arbitration provision:

> 7.1 Arbitration. Any Legal dispute or claim relating to or arising out of your use of the Site or Services (including any claim involving Musely or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunication providers and content providers) (a "Dispute") will be resolved through binding arbitration in Santa Clara, CA under the Federal Arbitration Act and, to the extent not inconsistent with or preempted by the Federal Arbitration Act, the Arbitration Rules set forth in California Code of Civil Procedure Section 1280 et seq. The arbitration will be administered by the American Arbitration Association under its Commercial Arbitration Rules conducted in Santa Clara County, California, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. You consent to jurisdiction of the state

> and federal courts of California for enforcement of this arbitration provision. You and Musely agree that such arbitration shall be conducted on an individual basis only, not a class, collective or representative basis, and both parties hereby waive any right to bring classwide, collective or representative claims before any arbitrator or in any forum. THE PARTIES UNDERSTAND THAT BY AGREEING TO ARBITRATE DISPUTES THEY ARE WAIVING ANY RIGHT THEY MIGHT OTHERWISE HAVE TO A JURY TRIAL. This arbitration provision is not intended to modify or limit substantive rights or the remedies available to the parties, including the right to seek interim relief, such as injunction or attachment, through judicial process, which shall not be deemed a waiver of the right to demand and obtain arbitration.

Ex. 4 to Buchanan Decl.

## III.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") embodies the "liberal federal policy favoring arbitration" that "makes arbitration agreements 'valid, irrevocable and enforceable' as written." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 346 (2011) (citations omitted). Under the FAA, courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v Italian Colors Rest.*, 570 U.S. 228, 223 (2013) (citations omitted).

Where the FAA applies, the Court's role "is limited to determining (1) whether a valid arbitration agreement exists, and if so (2) whether the arbitration agreement encompasses the dispute at issue." *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1173 (N.D. Cal. 2013) (Davila, J.) (citing inter alia 9 U.S.C. §§ 2-4). "If these conditions are satisfied, the court is without discretion to deny the motion and must compel arbitration." *Id*. (citation omitted).

Further, where the parties' arbitration agreement clearly and unmistakably delegates questions as to the scope to the arbitrator, "'a court may not override the contract' and 'has no power to decide the arbitrability issue." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)). In that event, the Court's role is limited to ordering the dispute to arbitration, and staying the action pending final resolution of the arbitration. *See Ambler*, 964 F. Supp. 2d at 1178 (citing inter alia 9 U.S.C. § 3); *see also Smith v. Spizziri,* No. 22-1218, 2024 WL 2193872, at *3 (U.S. May 16, 2024) (2024) ("When Section 3 [of the FAA] says that a court 'shall … stay'

the proceeding, the court must do so.”).

## IV.

## ARGUMENT

### A. The Federal Arbitration Act Governs the Parties’ Arbitration Agreement.

The FAA applies to arbitration agreements that are: (1) in writing; and (2) part of “a contract evidencing a transaction involving commerce.” 9 U.S.C. § 2. The first requirement is met, as the Participant Agreement is in writing. *See* Buchanan Decl., Ex. 4. *See also Ambler*, 964 F. Supp. 2d at 1174 (written agreement attached to parties’ declarations satisfies FAA).

The second requirement also is met, as the Participant Agreement lies well within the broad meaning of “involving commerce” under the FAA. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995). Musely’s telehealth operations, including its provision of prescription treatments to participants on a nationwide basis, necessarily involves multi-state commerce. *See* Buchanan Decl., ¶¶ 2, 3. As such, the FAA governs the Participant Agreement. *See Allied-Bruce*, 513 U.S. at 282 (holding that FAA governed contract with “multistate nature”); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003) (per curiam) (effect on interstate commerce measured “in the aggregate”). This interstate reach is confirmed in the Participant Agreement’s arbitration provision, which specifies that the FAA applies. *See* Buchanan Decl., Ex. 4, Participant Agreement, Section 7.1 (requiring arbitration “under the Federal Arbitration Act”). *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-444 (2006).

### B. Plaintiff and Musely Agreed To Binding Individual Arbitration.

As a general matter under California law, “the essential elements of a binding contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration.” *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (cleaned up), citing Cal. Civ. Code § 1550. Each of these elements is satisfied here.

**Capacity**. Plaintiff is an adult, rather than a minor or other person not capable of contracting. *See* Cal. Civ. Code § 1556; Fed. R. Civ. P. 17(c).

**Consent.** To form a contract under California law, there “must be actual or constructive notice of the agreement and the parties must manifest mutual assent.” *Keebaugh v. Warner Bros.*

*Ent. Inc.*, No. 22-55982, 2024 WL 1819651, at *4 (9th Cir. Apr. 26, 2024), citing *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 60 505, 512-513 (9th Cir. 2023).

In the online context, internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Keebaugh,* 2024 WL 1819641, at *4, citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464 (2021). "'Sign-in-wrap' agreements are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." *Sellers*, 73 Cal. App. 5th at 464. "While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up." *Id.;see also B.D. v. Blizzard Entertainment, Inc.,* 76 Cal. App. 5th 931, 946 (2022) (enforcing arbitration provision in sign-in wrap agreements).

When evaluating sign-in wrap agreements, courts must first evaluate "the full context of the transaction[,]" including whether the transaction contemplated "a continuing, forward-looking relationship" governed by terms and conditions." *Id*. at 949, citing *Sellers*, 73 Cal.App.5th at 751 (internal quotations omitted). The sign-in wrap agreement will form an enforceable contract "if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Keebaugh*, 2024 WL 1819651, at *5, quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849. 855 (9th Cir. 2022).

Here, Plaintiff Musely's Participant Agreement is a fully enforceable sign-in wrap agreement. The context of Plaintiff's visits to Musely's website – seeking telehealth services and ongoing prescription skincare treatment – clearly contemplates an ongoing relationship. Plaintiff opened her Musely account in July 2022 to consider various treatment options and at that time agreed to check in with Musely's eNurse app for 60 days to ensure consistent treatment for best results. Compl., ¶ 22; Buchanan Decl., ¶¶ 14, 16, 22. Plaintiff then returned to the Musely website on two occasions eight and ten months later, using her existing Musely account to review and ultimately purchase treatment in June 2023. Buchanan Decl., ¶¶ 22-24. After making her

purchase, she provided follow-up information (specifically, by uploading a photograph) to permit doctor review and prescription for the treatment. *Id.*, ¶¶ 25-27. Plaintiff committed to beginning her 60-day check in period with eNurse upon receipt of her treatment in July 2023, ending in September 2023. The relationship spanned over a year at minimum, even assuming Plaintiff never made another purchase from Musely. The nature of the relationship far exceeds the sort of relationship that has been held to constitute a forward-looking and ongoing relationship that the reasonable user would expect to be governed by terms and conditions. *See Blizzard Entertainment, Inc.,* 76 Cal.App.5th at 946 (video game enrollment). This continuing relationship more than "satisfies the context-of-the-transaction test" under California law. *Keebaugh*, 2024 WL 1819651, at * 10.

The visual aspects of Musely's notice of the Participant Agreement are reasonably conspicuous and sufficient to make it fully enforceable. The first notice Plaintiff encountered – the same notice she saw four times during her four visits to Musely's website – was the Telehealth Consent screen. Buchanan Decl., ¶¶ 13, 22. This visually uncluttered screen presents the statement "I agree to the terms of Telehealth Consent" next to a pink checkbox that draws the eye, directly between a box field the Plaintiff completed and the "Next" button she clicked in the very first step of the enrollment process. *Id.*, ¶¶ 13, 23, Ex. 2. The disclosure of the Telehealth Consent terms is in the same size font as the text around it and uses underlining to indicate the presence of a hyperlink. *Id.* The hyperlink opens a pop-up that further states "For Musely's full Telehealth Terms and Conditions please visit the terms page or click on the link provided below. By consenting to Telehealth you are agreeing to our full terms and conditions." *Id.*, ¶ 13, Ex. 3. The Telehealth Consent screen put Plaintiff on inquiry notice of the Participant Agreement. *Blizzard Ent*., 76 Cal. App. 5th at 951 (significance of clicking the "Continue" button in the pop-up was clear where white text contrasting against a dark background stated: "By clicking 'Continue', I acknowledge that I have read and understand the Blizzard [License Agreement] applicable to my country of residence."); *see also*, *Snow v. Nectar Brand, LLC*, No. 222CV07912MCSMRW, 2023 WL 2558544, at *2 (C.D. Cal. Mar. 2, 2023) (notice of agreement

was conspicuous where it appeared in same font size and gray color as other text, set in white background, using underlined hyperlinks).

Further, Plaintiff encountered notice of the Participant Agreement in the context of creating her account, as well. The account creation screen at the second step of the enrollment process shares similar visual features, but links directly to the Participant Agreement. This visually uncluttered screen presents the statement, "By signing up, you agree to Musely's Privacy Policy and Terms of Use." Buchanan Decl., ¶ 14, Ex. 5. Again, this statement was presented directly between the box field Plaintiff completed and the "Create Account" button she clicked. *Id.* Plaintiff clicked a button that says "Create Account" to indicate her assent. *Id.*, ¶¶ 14, 23. The visual aspects of these two screens are sufficient to establish inquiry notice and Plaintiff's action manifesting her consent. *See generally Lee v. Donotpay, Inc.*, 683 F. Supp. 3d 1062, 1072-1074 (C.D. Cal. July 20, 2023) (collecting examples of screens with terms and conditions hyperlinks deemed to establish consent); *cf., In re Ring LLC Priv. Litig.*, No. CV1910899MWFRAOX, 2021 WL 2621197, at *6 (C.D. Cal. June 24, 2021) (sufficient notice of agreement provided with an explicit textual notice, on an uncluttered page directly above or below the create account button, that creating an account will act as a manifestation of the user's intent to be bound).

**Lawful Object**. Arbitration is a lawful object in California. *See, e.g., Sanchez v. Valencia Holding Co*., LLC, 61 Cal. 4th 899, 934 (2015) ("California has a strong public policy in favor of enforcing arbitration agreements.") (internal quotations and citation omitted).

**Consideration**. Under California law, "the promise to be bound by the arbitration process itself serves as adequate consideration." *Circuit City Stores v. Najd*, 294 F.3d 1104 (9th Cir. 2002) (citations omitted).

As all elements for forming a valid agreement under California law are met, it follows that Plaintiff entered into a binding agreement to arbitrate with Defendant.

### C. Any Disputes As To Scope Are Delegated to the Arbitrator.

The Ninth Circuit has recently reaffirmed that parties may clearly delegate arbitrability disputes – including whether a claim is within the scope of the arbitration agreement – to the arbitrator, by incorporating an arbitration provider's arbitration rules by reference. *See Patrick*, 93

F.4th at 480-481 ("Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."); *Keebaugh*, 2024 WL 1819851 at n. 2 (incorporation of AAA Consumer Arbitration Rules into arbitration agreement "delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers the claim at issue or whether the agreement is enforceable.").

Here, Section 7.1 of the Participant Agreement incorporates the AAA's Commercial Arbitration Rules by reference. Buchanan Decl., Ex. 4, Participant Agreement, Section 7.1 ("The arbitration will be administered by the American Arbitration Association under its Commercial Arbitration Rules …"). Rule R-7 of the AAA's Commercial Rules in turn reserves questions of arbitrability, including scope, to the arbitrator. *See* R-7(a)("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").[2] Even if Plaintiff's claim is ultimately resolved under the AAA Consumer Arbitration Rules (see Commercial Arbitration Rules at R-1), the Ninth Circuit has confirmed that the AAA Consumer Arbitration Rules likewise delegate scope disputes to the arbitrator. *See Keebaugh,* 2024 WL 1819851 at n.2. It follows that the arbitrator, rather than this Court, should decide any challenge that Plaintiff might assert as to whether her claim falls within the scope of the arbitration provision in the Participant Agreement.

And even if the Court were to address the scope of the arbitration agreement, Plaintiff's claim is well within the parameters of that agreement. Plaintiff's challenge to the operation of the Musely site is manifestly a "dispute or claim relating to or arising out of [her] use of the Site or Services," and thus within the scope of the arbitration agreement. In the Ninth Circuit and elsewhere, such provisions are broadly construed. *See, e.g., Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F. 2d 1458, 1464 (9th Cir. 1983) (collecting cases). In light of the presumption in favor of arbitrability, there is no basis for excluding Plaintiff's claims from arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

[2] Available at https://adr.org/sites/default/files/Commercial%20Rules.pdf.

**V.**

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court order Plaintiff to resolve her claims in individual arbitration, and stay this action pending final resolution of the arbitration.

Dated: May 24, 2024

K&L GATES LLP

By: */s Michael J. Stortz*
Michael J. Stortz
Avril G. Love

Attorneys for Defendant
TRUSPER, INC. d/b/a MUSELY

**CERTIFICATE OF SERVICE**

On May 24, 2024, I electronically filed this document with the Clerk's Office using the CM/ECF system, which sends a Notice of Electronic Filing to all registered attorneys.

Dated: May 24, 2024

*/s/Michael J. Stortz*
Michael J. Stortz