Michael J. Stortz (139386)
Michael.Stortz@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Avril G. Love (237028)
Avril.Love@klgates.com
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant
TRUSPER, INC. d/b/a MUSELY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIA RAMIREZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUSPER, INC. d/b/a MUSELY,<br><br>Defendant. | Case No. 5:24-cv-02012-EJD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY LITIGATION**<br><br>Date: September 19, 2024<br>Time: 9:00 a.m.<br>Dept: Courtroom 4 – 5th Floor<br>Judge: Hon. Edward J. Davila<br>Trial Date: TBD<br>Date Action Filed: April 2, 2024 |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. THE PARTIES FORMED AN ENFORCEABLE AGREEMENT TO ARBITRATE. ..... 2

A. Plaintiff Bears the Burden of Presenting Evidence Showing A Triable Issue. ..... 2

B. Plaintiff Has Not Attempted to Meet her Burden in Opposition. ..... 3

C. Musely Established Plaintiff's Consent to the Participant Agreement. ..... 4

III. ANY ARBITRABILITY DISPUTE IS DELEGATED TO THE ARBITRATOR. ..... 10

IV. PLAINTIFF IS NOT ENTITLED TO DISCOVERY. ..... 13

V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ahaza Systems, Inc.*,
482 F.3d 1118 (9th Cir. 2007) ........ 2

*B.D. v. Blizzard Entertainment, Inc.*,
76 Cal. App. 5th 931 (2022) ........ 5

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 5, 6

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ........ 10, 11

*Brennan v. Opus Bank*,
No. 2:13-CV-00094-RSM, 2013 WL 2445430 (W.D. Wash. June 5, 2013), aff'd, 796 F.3d 1125 (9th Cir. 2015) ........ 12

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ........ 10, 11, 12, 13

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........ 2

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ........ 6

*Curry v. Matividad Med. Ctr.*,
No. 5:11-CV-04662 EJD, 2013 WL 2338110 (N.D. Cal. May 28, 2013) (J. Davila) ........ 2, 3

*Dean v. OKCOIN USA INC.*,
No. 24-CV-01331-PCP, 2024 WL 3522207 (N.D. Cal. July 23, 2024) ........ 6, 10

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........ 9

*Ghaziadeh v. Coursera Inc.*,
2024 WL 3455255 (N.D. Cal. 2024) (Davila, J.) ........ *passim*

*Hal Roach Studios, Inc. v. Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990) ........ 3

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ........ 2, 3

*Hansen v. United States*,
7 F.3d 137 (9th Cir. 1993) .... 3

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019) .... 11

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) .... 11

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .... *passim*

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) .... 9

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042, 107 Cal. Rptr. 2d 645 (2001) .... 9

*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020) .... 13

*McGhee v. N. Am. Bancard, LLC*,
No. 17-CV-0586-AJB-KSC, 2017 WL 3118799 (S.D. Cal. July 21, 2017),
aff'd, 755 F. App'x 718 (9th Cir. 2019) .... 9

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .... 4, 5, 6

*Oppenheimer & Co., Inc. v. Neidhardt*,
56 F.3d 352 (2d Cir.1995) .... 2

*Oracle America v. Myriad Group, A.G.*,
724 F.3d 1069 (2013) .... 12

*Ramirez v. Charter Commc'ns, Inc.*,
No. S273802, 2024 WL 3405593 (Cal. July 15, 2024) .... 12

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) .... 11

*Smith v. Mack Trucks, Inc.*,
505 F.2d 1248 (9th Cir. 1974) .... 2, 3

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002) .... 2, 3

*Van Tassell v. United Mktg. Grp., LLC*,
795 F. Supp. 2d 770 (N.D. Ill. 2011) .... 9, 10

*Wallrich v. Samsung Elecs. Am., Inc.*,
106 F.4th 609 (7th Cir. 2024) .......... 3

**Other Authorities**

American Arbitration Association Rule 7 .......... 11, 12

Fed. R. Civ. P. 56 .......... 2

## I. INTRODUCTION

Plaintiff must arbitrate the claims in her Complaint. Her Opposition fails to create a triable issue on the question of contract formation, since it contains no declaration from Plaintiff herself denying what she otherwise admits in her Complaint, including that she formed an ongoing relationship with Defendant ("Defendant" or "Musely") for the purpose of ordering prescription skin care treatment through Musely's website. Complaint (Doc. 1) ¶ 5. As Musely established in its moving papers, Plaintiff repeatedly consented to the Musely Participant Agreement, including its arbitration provision, over the course of her engagement with Musely's online platform in 2022 and 2023. While Plaintiff's counsel has submitted a declaration regarding counsel's own 2024 pre-suit investigation, Plaintiff herself has submitted no declaration as to her experience in 2022 and 2023, much less a declaration specifically denying any of the facts set forth in Musely's moving papers. Under summary judgment standards applicable to this motion, it follows that Plaintiff has shown no triable issue, and Musely's motion must be granted.

To avoid that outcome, Plaintiff through counsel asserts a scattershot of challenges to Musely's online enrollment process. These challenges fail for lack of merit, as Musely shows below, and because they ignore Ninth Circuit precedent and this Court's own recent decision that analyze formation based on the parties' ongoing relationship and the context of the transaction. *See Ghaziadeh v. Coursera Inc.*, 2024 WL 3455255, * 6 (N.D. Cal. 2024) (Davila, J.), citing *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1004, 1019 (9th Cir. 2024). Her Opposition fails to cite, much less address, *Keebaugh* or *Coursera*. And Plaintiff fails to rebut – at all – Musely's evidence that she repeatedly consented to the Participant Agreement, as part of enrolling with Musely in 2022 and subsequently obtaining a prescription for and purchasing skincare treatment in 2023.

Plaintiff's remaining challenges to the arbitration provision are misplaced, as such challenges are delegated to the arbitrator, rather than the Court, to decide. Plaintiff's only argument against such delegation is a novel challenge to the time-honored jurisdictional provision of the AAA Rules that the Ninth Circuit has twice concluded to be effective in delegating arbitrability disputes to the arbitrator. That challenge, and Plaintiff's remaining arguments, all

fail. Musely's motion should be granted, and this action stayed pending completion of arbitration of Plaintiff's individual claim.

## II. THE PARTIES FORMED AN ENFORCEABLE AGREEMENT TO ARBITRATE.

### A. Plaintiff Bears the Burden of Presenting Evidence Showing A Triable Issue.

As Plaintiff's Opposition acknowledges (Doc. 22, 15:19), parties seeking to avoid arbitration are subject to the same standards applicable to parties opposing summary judgment under Federal Rule of Civil Procedure 56. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021), citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, fn. 1 (7th Cir. 2002) (summary judgment standard is appropriate because order compelling arbitration "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.").

Under these standards, the moving party bears the initial burden of informing the court of the basis for the motion. *Curry v. Matividad Med. Ctr.*, No. 5:11-CV-04662 EJD, 2013 WL 2338110, at *1 (N.D. Cal. May 28, 2013) (J. Davila), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this initial burden, the burden then shifts to the opposing party to present specific facts showing that there is a genuine issue for trial. *Id.* at *2, citing Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

Critically, the opposing party may not rest on a blanket denial, and instead must submit evidentiary facts showing that there is a genuine dispute of material fact. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995) (compelling arbitration where plaintiff's evidence failed to raise a genuine issue of fact); *accord, Tinder*, 305 F.3d at 735. The opposing party cannot create a genuine issue of material fact simply through counsel's arguments or averments in opposition. *See Smith v. Mack Trucks, Inc.*, 505 F.2d 1248 (9th Cir. 1974); *In re Ahaza Systems, Inc.*, 482 F.3d 1118, 1112, fn. 1 (9th Cir. 2007) (counsel's arguments and statements not evidence and do not show material fact). Nor are conclusory or speculative testimony in opposition affidavits sufficient. *See Curry*, 2013 WL 2338110, at *2 (the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment), citing *Thornhill*

*Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the opposing party must come forward with specific evidence sufficient to satisfy the burden. *Curry*, 2013 WL 2338110, at *2, citing Fed. R. Civ. P. 56(c); *see also Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

B. Plaintiff Has Not Attempted to Meet her Burden in Opposition.

Here, Plaintiff has not even attempted to present evidence in opposition. She has submitted no declaration, much less a declaration that specifically denies any of the facts set forth in Musely's moving papers regarding her interactions with Musely's website in 2022 and 2023. This failure to present evidence in opposition amounts to a default on the issue of contract formation. *See Smith*, 505 F.2d at 1249 (9th Cir. 1974) (affirming grant of summary judgment, where opposing party relied on legal memorandum and argument of counsel "purport[ing] to tender factual questions"); *see also Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 619–20 (7th Cir. 2024) ("The consumers [opposing arbitration] had the opportunity to present their evidence, and they failed to do so."), citing *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit .... ") (quotation omitted).

Illustrative here is the *Tinder* case, where the Seventh Circuit compelled arbitration although plaintiff swore in her opposition affidavit that she "does not recall seeing or reviewing the Arbitration Program brochure that Defendant alleges was" provided to her. *Tinder,* 305 F.3d at 736. In a similar context, the Ninth Circuit held that no triable issue of fact existed that an IRS notice was sent to the defendants where the IRS presented a computer-generated report specifically indicating that the notice was sent, while the defendants provided only a conclusory assertion that they did not receive it. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

Here, Plaintiff has done even less than the unsuccessful *Tinder* and *Hansen* parties. Other than her brief, Plaintiff's Opposition consists of a four-paragraph declaration of her counsel regarding a copy of Musely's "Terms of Use" landing page as it purportedly appeared in February 2024 – more than nine months after Plaintiff's last visit to Musely's website and nineteen months after her first visit. Counsel's declaration does not amount to evidence. *See* Ninth Circuit Manual

of Jury Instructions – Civil 1.10 ("Arguments and statements by lawyers are not evidence. The lawyers are not witnesses."). Counsel's selective review of the website's landing page in 2024 is not relevant to Plaintiff's experience in navigating the site, either when she enrolled in 2022 or on her subsequent visits in 2023.

When considered against Musely's evidentiary showing in support of its motion, Plaintiff's silence speaks volumes. Plaintiff does not deny that she received notice of the parties' arbitration agreement in 2022 or 2023. She submits no evidence about Musely's website, as it appeared in 2022 and 2023, nor does she refute any of the features of the notice established in Musely's motion. Plaintiff does not challenge that she advanced through the enrollment process, as Musely described it, to make her purchase. Nor does Plaintiff refute Musely's description of the parties' continuing, forward-looking relationship in connection with her purchase of prescription skincare treatment in 2023. This dearth of evidence is fatal to Plaintiff's Opposition, and it cannot be salvaged with her counsel's speculation.[1]

Because Plaintiff has failed to put any relevant facts in evidence, the only issue for the Court to decide is whether Musely met the initial burden of showing the parties formed a contract that included an arbitration provision. That question, moreover, can be decided as a matter of law, particularly given the absence of any evidence to the contrary. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 518 (9th Cir. 2023) (enforcing agreement to arbitrate where "there is no dispute that the webpages themselves contained the notices, that the notices linked to the Terms, and that the Terms contained the arbitration provision.").

C. <u>Musely Established Plaintiff's Consent to the Participant Agreement.</u>

Under *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019–20 (9th Cir. 2024), the Court must look to both "the context of the transaction" and the "placement of the notice" when

---

[1] Musely has updated its website over time, and the information currently available online is not indicative of Musely's website as it appeared in 2022 or 2023. Musely's evidence references webpages that are archived by date and reflects the pertinent webpages as they appeared during Plaintiff's website visits. *See*, Doc. 14-1, Mtn., Buchanan Decl., ¶ 31.

analyzing online consent pursuant to *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022). In *Keebaugh,* the Ninth Circuit noted that downloading an app was "different from a typical one-and-done interaction between the user and a traditional website…" because "the user will [] have ongoing access to that app unless something material changes." *Id.* at 1020. The continuing nature of the relationship in *Keebaugh* rendered it unnecessary for the user to "establish an account…for the context to reflect an ongoing relationship" because no "reasonably prudent internet user" would consider the app download to be "equivalent to an insular and discrete one-time transaction." *Id.*

Here, Plaintiff has nothing to say about the context of her interactions with Musely, or their import in analyzing her consent to the Participant Agreement. She does not dispute that she expected to have an ongoing relationship with Musely. Indeed, she concedes that she understood she was buying prescription medication. Opp'n to Motion (Doc. 22) at 6. The facts established by Musely – that Plaintiff created an account, agreed to download Musely's app and use it for at least 60 days, consented to receive telehealth services, and purchased prescription medication (Buchanan Decl. in support of Motion, Doc. 14-1, ¶¶ 13, 14, 16, 18, 19, 22, 23, 24, 30) – are uncontested by Plaintiff and satisfy the context-of-the-transaction test. *See Keebaugh*, 100 F.4th at 1020; *Oberstein*, 60 F.4th at 517 (context of transaction, where users engaged in "a full registration process" reflected "the contemplation of some sort of continuing relationship that would have put users on notice for a link to the terms of that continuing relationship") (quotations omitted); *Coursera*, 2024 WL 3455255, at *7 (user who created Coursera account for access to educational courses would "or should" expect access to the platform to be continual and governed by terms of use); *B.D. v. Blizzard Entertainment, Inc.*, 76 Cal. App. 5th 931, 946 (2022) (enforcing arbitration provision where plaintiff created a video game account).

The visual aspects of Musely's notice are also reasonably conspicuous under precedent that Plaintiff fails to address. Plaintiff relies on cases that pre-date *Keebaugh* and *Oberstein*, and the Ninth Circuit's instructions that context of the relationship, as well as overall screen design must be considered. *See Keebaugh*, 100 F.4th at 1019 (emphasis added). In *Berman*, the contextual analysis was limited to only the visual elements. *Id.,* citing *Berman*, 30 F.4th at 856

("First, to be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."). In *Oberstein*, the court focused on the context of the transaction. *Id.*

Plaintiff compares Musely's notice to those in *Berman* and *Sellers* (Pl.'s Opp., Doc. 22 at pp. 19-20) based solely on the specific features of web design in those cases. This fails to take into account the overall screen design or the parties' continuing relationship in this case, which the Ninth Circuit has emphasized in *Oberstein* and *Keebaugh*. The standards for inquiry notice do not turn on arbitrary features of web design, such as the font size or color or the number of clicks to the agreement – but rather on whether the parties contemplated a continuing relationship and the overall presentation of the online terms. Judge Pitts recently explained this very point in enforcing an arbitration provision appearing in online Terms that were available on a page along with the defendant's privacy policy, so as to require the user to click twice to access the Terms from the sign-up screen. *Dean v. OKCOIN USA INC.,* No. 24-CV-01331-PCP, 2024 WL 3522207, at *1 (N.D. Cal. July 23, 2024) (citing *Keebaugh*, 100 F.4th at 1017). Similarly, Judge Orrick compelled arbitration as to claims against Uber, based on Uber Terms, where the Terms were accessible on a page with the Uber privacy policy, requiring two clicks to access the Terms from the initial sign-up screen. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017) (enforcing arbitration where consumer had to first click a hyperlinked terms button that led to a webpage with clickable buttons for terms and conditions and privacy policy); Michael CORDAS, individually and on behalf of all others similarly situated, Plaintiff, v. UBER TECHNOLOGIES, INC., Defendant., 2016 WL 8997007 (N.D.Cal.) (Decl. in Support of Mot., Doc. 27-1, ¶ 7c.).

The same conclusion follows for Musely's sign-up screen, which when reviewed in the context of its overall screen design, much more resembles the visually uncluttered notices in *Keebaugh* and *Coursera*, as shown below.




**Figure 1.** Musely's Telehealth Consent screen, Doc. 14-3.




**Figure 2.** Musely's account creation screen, Doc. 14-6.




2019 Version




2020 Version

**Figure 3.** Terms of Service screens in *Keebaugh;* notice was held to be reasonably conspicuous.




**Figure 4.** Terms of service screen in *Coursera;* notice was held to be reasonably conspicuous

*See also Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1072 (C.D. Cal. 2023)[2].

Equally unavailing is Plaintiff's assertion that the Musely online process is "byzantine." Similar multi-step online consent processes have been approved by the courts. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839–40 (S.D.N.Y. 2012) ("clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else. Whether or not the consumer bothers to look is irrelevant. … Fteja was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough.").

Plaintiff also is mistaken by conflating *whether* a contract was formed with *what provisions* of the contract could be reviewed in the opening paragraphs of the Terms., ignoring black letter California law that consumers can be bound by terms they do not view. *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049, 107 Cal. Rptr. 2d 645, 651 (2001), as modified (June 8, 2001) (a party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.). The arbitration provision is simply a term of the Participant Agreement – a point Plaintiff quietly concedes. Pl.'s Opp., Doc. 22 at pp. 8, 13, 22, 23.

Indeed, even the cases Plaintiff relies on contradict her position and are dissimilar from the facts in the record here. In *McGhee v. N. Am. Bancard, LLC*, the plaintiff would have had to click two times to see the arbitration provision at issue. No. 17-CV-0586-AJB-KSC, 2017 WL 3118799, at *3 (S.D. Cal. July 21, 2017), aff'd, 755 F. App'x 718 (9th Cir. 2019). Yet the *McGhee* court stated that "[e]ven this two-step process could conceivably fall within the parameters of a modified clickwrap agreement." *Id.* (noting "After all, the 'View User agreement here' hyperlink is located near the top of the Terms and Conditions page, so this is not a situation where the second hyperlink is embedded at the bottom of a lengthy webpage…"). The *McGhee* court did not enforce the arbitration provision in the second hyperlinked agreement because there was a *first* agreement to which the plaintiff actually assented. The *Van Tassell* court likewise found the

[2] The *Lee* Opinion is attached for ease of reference hereto as Exhibit A.

"multi-step process" at issue there to be "problematic" because a user would have to, "without any reason to do so, [] scroll down the home page, make the illogical leap that 'Customer Service' means binding 'Conditions of Use' and click on that link[, and] next scroll down a lengthy page containing unrelated information to find the Conditions of Use, or click on the 'Conditions of Use, Notice & Disclaimers' link sandwiched between 'Price Adjustments' and 'CHEFS Gift Card & Product Giveaway' links." *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 792 (N.D. Ill. 2011).

Here, there are clear hyperlinks that direct website visitors to the Participant Agreement. The Telehealth Consent screen gave Plaintiff a reason to click through to the "full terms of use," and the account creation screen likewise would have directed her to the Participant Agreement via a table of contents screen. Musely's notice was sufficient under the law because it identified the agreement, provided access to it, and made its contractual nature obvious. *See, Keebaugh*, 100 F.4th at 1019; *Coursera*, 2024 WL 3455255, at *6; *OKCOIN USA INC.,* 2024 WL 3522207, at *1 (N.D. Cal. July 23, 2024). It follows that she entered into the Participant Agreement, including its arbitration provision, when she manifested her consent by pressing the "Next" and "Create Account" buttons. *Keebaugh*, 100 F.4th at 1020. As such, she is bound to the arbitration provision in the Participant Agreement.

## III. ANY ARBITRABILITY DISPUTE IS DELEGATED TO THE ARBITRATOR.

The FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023), citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator. *Id.* Thus, a court must first resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. *Id.* Finally, if the parties did form an agreement to

arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance. *Id.*

In the Ninth Circuit, a party resisting a delegation provision must first mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration. *Id.* at 1009. Second, a party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable. *Id.* at 1009-10. However, under *Rent-A-Center*, a specific agreement to arbitrate may still be enforced, despite a party's challenge to the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 70, 130 S. Ct. 2772, 2774, 177 L. Ed. 2d 403 (2010), *citing Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).

Here, Plaintiff does not challenge that arbitrability goes to the arbitrator under Rule 7 of the American Arbitration Association ("AAA") Commercial Arbitration Rules (as well as other AAA Rules, including the AAA Consumer Rules). Instead, Plaintiff raises a novel challenge to the AAA Rule itself, and specifically to the portion of the rule that allows for "existence of…" the arbitration agreement to be determined by the arbitrator in certain circumstances. The language is hardly unusual, since the Supreme Court has recognized parties may agree in some instances to delegate to the arbitrator "whether the parties have agreed to arbitrate." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019). And the language is not at issue here, since both sides agree that this Court should determine the formation question here. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 540-41 (9th Cir. 2021) ("The applicable precedent thus forecloses [plaintiff's] argument that courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute.").

As for the question whether the AAA Rule is effective to delegate arbitrability disputes to the arbitrator, that question has been answered repeatedly by the Ninth Circuit in the affirmative.

*See Caremark, LLC*, 43 F.4th at 1031 ("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Brennan v. Opus Bank,* No. 2:13-CV-00094-RSM, 2013 WL 2445430, at *4 (W.D. Wash. June 5, 2013), aff'd, 796 F.3d 1125 (9th Cir. 2015) (enforcing identical language challenged here – "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."); *Oracle America v. Myriad Group, A.G.*, 724 F.3d 1069, 1074 & n.1 (2013) (quoting AAA Commercial Arbitration Rule 7(a), and enforcing similar provision as effectively delegating arbitrability disputes). Delegation pursuant to AAA Rule 7 is certainly not unconscionable or otherwise unenforceable, as a matter of Ninth Circuit precedent.

Plaintiff's other conscionability challenges to the arbitration provision likewise fail. As a threshold matter, even if these challenges had merit (and they do not), they would not prevent the Court from determining the purported "unconscionability" of the arbitration rules selected, with the option of severing specific portions of the rules as needed to preserve the parties' arbitration agreement. *See Ramirez v. Charter Commc'ns, Inc.*, No. S273802, 2024 WL 3405593, at *19 (Cal. July 15, 2024) ("courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; and enforcing the balance of the contract would be in the interests of justice.").

And Plaintiff's conscionability challenges otherwise fail on the merits. As Plaintiff notes, she must show both procedural and substantive unconscionability, but she can do neither. As explained above and in the Motion, Plaintiff cannot show procedural unconscionability when she contracted for telehealth services and had multiple opportunities to review the Participant Agreement and its arbitration provisions before she made her purchase. Her argument about the substantive unconscionability of hefty arbitration fees under the Commercial Rules is simply contrary to fact. Since 2021, the Commercial Rules "apply the Consumer Arbitration Fee Schedule to any dispute between an online marketplace or platform and an individual user or

subscriber (using or subscribed to the service as an individual and not incorporated) and the dispute does not involve work or work-related claims." AAA Comm'l Rules, R-1, fn. 2.

Nor does Plaintiff's argument about the interpretation of the Participant Agreement render the arbitration provision unenforceable. The full language of the provision at issue clarifies the meaning of this provision immediately:

> This arbitration provision is not intended to modify or limit substantive rights or the remedies available to the parties, including the right to seek interim relief, such as injunction or attachment, through judicial process, which shall not be deemed a waiver of the right to demand and obtain arbitration.

Participant Agreement, Doc. 14-5 at p. 15. Notwithstanding any superfluous commas, the language simply preserves the parties' right to seek the relief they could get in a judicial proceeding, including public injunctive relief under *McGill. See, Keebaugh*, 100 F.4th at 1021-22 (explaining unenforceability of waiver of public injunctive relief; *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 899 (C.D. Cal. 2020) (same).

Plaintiff's strained interpretation of this provision would render the agreement to arbitrate meaningless. Moreover, the validity of her construction of the arbitration provision is unquestionably for the arbitrator to decide in the first instance. *Caremark, LLC*, 43 F.4th at 1030. Thus, the Court must enforce the unchallenged agreement to arbitrate and allow an arbitrator to determine the interpretation and enforceability questions Plaintiff has raised.

## IV. PLAINTIFF IS NOT ENTITLED TO DISCOVERY.

The Court should reject Plaintiff's renewed request for discovery. At the threshold, Plaintiff has forfeited any request for discovery by failing to present even a declaration denying her consent to the Participant Agreement. And even if Plaintff had done so, the discovery she seeks is irrelevant, or the information has been provided already by Musely. *See* Declaration of S. Buchanan in support of Motion, Doc. 14-1, ¶¶ 9, 13, 14, 15, 16, 31. The only information Plaintiff seeks that is not already in the record – URLs embedded into hyperlinks of the webpages Plaintiff visited – is immaterial to the issue of contract formation. Order, Doc. 21 at p. 4 (FAA's procedure allows for optional discovery, if necessary); *Coursera, Inc.*, 2024 WL 3455255, at *15 (denying

request for discovery of website flow, full webpages, confirmation that screenshots reflect actual screens presented to plaintiff, email records of TOU changes received or opened by plaintiff, information about how email notices would actually appear in a user's inbox because it would not be useful to the Court.). Having raised no triable issue, Plaintiff is not entitled to any discovery, and the Court should decide Musely's Motion as a matter of law.

## V. CONCLUSION

For the foregoing reasons, Musely respectfully requests that the Court grant its motion, issue an order compelling Plaintiff to resolve her claims in individual arbitration, pursuant to the arbitration provision in the Musely Participant Agreement, and stay this action pending final resolution of the arbitration.

Dated: August 1, 2024

K&L GATES LLP

By: /s/ Michael J. Stortz
Michael J. Stortz
Avril G. Love

Attorneys for Defendant
TRUSPER, INC. d/b/a MUSELY