TIMOTHY K. BRANSON (SBN 187242)
tbranson@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7441
Facsimile: (619) 696-7124

SARA ANDERSON FREY (pro hac vice)
sfrey@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone: (215) 717-4009
Facsimile: (215) 693-6650

Attorneys for Defendant
TRUSPER, INC. D/B/A MUSELY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLA RAMIREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRUSPER, INC. d/b/a MUSELY<br><br>Defendant. | Case No. 5:24-cv-02012-EJD<br><br>**DEFENDANT TRUSPER, INC. D/B/A MUSELY'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 4, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 4 – 5th Floor<br>Judge: Honorable Edward J. Davila<br><br>Action Filed: April 2, 2024 |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on June 4, 2026[1] at 9:00 a.m., or as soon as thereafter as the matter may be heard, in Courtroom 4-5th Floor of the United States District Court, Northern District of California, located at Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113, Defendant Trusper, Inc. d/b/a Musely ("Musely" or "Defendant") will and hereby does move this Court for an Order dismissing with prejudice all counts against Musely in the First Amended Complaint filed by Plaintiff Ella Ramirez ("Ramirez" or "Plaintiff"). This Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities herein, Request for Judicial Notice, Declaration of Sara Anderson Frey, Declaration of Steven Buchanan, the pleadings and papers on file in this action, any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

Dated: February 27, 2026

GORDON REES SCULLY
MANSUKHANI, LLP

By: */s/ Sara Anderson Frey*
Timothy K. Branson
Sara Anderson Frey (pro hac vice)
Attorney for Defendant
TRUSPER, INC. d/b/a MUSELY

---

[1] At the time of filing, counsel had not received a response from the Court regarding counsels' mutually agreed upon proposed hearing dates. This hearing date is subject to the Court's availability and confirmation.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1

II. STATEMENT OF ISSUES ... 2

III. STATEMENT OF FACTS ... 3

A. Procedural History ... 3

B. Allegations in the FAC ... 3

C. Plaintiff's Consent to Musely's Privacy Policy ... 4

IV. LEGAL STANDARD ... 7

V. LEGAL ARGUMENT ... 8

A. Plaintiff Consented to Disclosure of Personal Information ... 8

1. The Musely Website Provided Reasonably Conspicuous Notice of the Terms of the Privacy Policy ... 9

2. Plaintiff Manifested Assent to the Privacy Policies ... 11

3. The Website Informed Plaintiff the Information Allegedly Improperly Intercepted Would be Collected ... 12

B. Plaintiff Fails to State a CIPA Section 631 Claim (Count III) ... 12

1. Plaintiff Fails to Adequately Allege Predicate/Direct Liability ... 13

2. CIPA's Party Exception Applies to Musely's Vendors ... 15

3. Plaintiff Does Not Plausibly Allege Interception "While In Transit" ... 16

C. Plaintiff Fails to State a CMIA Claim (Count II) ... 17

D. Plaintiff Fails to Allege Violation of the California Constitution (Count III) ... 19

E. Plaintiff Fails to State a CIPA Section 632 Claim (Count IV) ... 20

1. Plaintiff Fails to Adequately Allege Derivative Liability ... 20

2. Plaintiff's Internet Communications Were Not Confidential ... 21

F. Plaintiff Fails to State a Federal Wiretap Claim (Count V) ... 22

VI. CONCLUSION ... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8, 13

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 19, 20, 22

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .......... 7

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023) .......... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2006) .......... 7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2023) .......... 8, 9

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 8

*Cavanaugh v. Fanatics, LLC*,
738 F. Supp. 3d 1285 (E.D. Cal. 2024) .......... 9, 10

*DeLeon v. Verizon Wireless, LLC*,
207 Cal.App.4th 800 (2012) .......... 11

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 1

*Doe I v. Google LLC*,
No. 23-CV-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .......... 22, 23

*Doe v. Kaiser Foundation Health Plan, Inc.*,
No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 24

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 22

*Doe v. MKS Instruments, Inc.*,
No. SACV2300868, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) .......... 19

*Doe v. Talkiatry Mgmt. Svcs., LLC*,
__ F. Supp. 3d __, No. 5:25-cv-00781, 2026 WL 206463 (C.D. Cal. June 22, 2026) .......... 24, 25



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Eisenhower Med. Ctr. v. Super. Ct.*,
226 Cal.App.4th 430 (2014) ....................18

*Esparza v. UAG Escondido A1 Inc.*,
Case No. 23cv0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024)....................14, 21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................15

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ....................22

*Garcia v. Build.com, Inc.*,
Case No. 22-cv-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ....................13

*Garcia v. Enterprise Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................11

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................9

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................15

*Gray v. Luxottica of Am., Inc.*,
Case No. 8:24-cv-00160, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024)....................18

*Gutierrez v. Converse Inc.*,
No. CV 23-6547, 2024 WL 3511648 (C.D. Cal. July 12, 2024) ....................13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022), *aff'd* No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................19

*Heerde v. Learfield Communications, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................16

*Heiting v. athenahealth, Inc.*,
No. 2:23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024)....................15

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 107 (C.D. Cal. 2023) ....................14

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ....................16

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ....................19

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................19

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-CV-04792, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ....................25

*Keebaugh v. Warner Bros. Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................8, 9, 10

*L.B. v. LinkedIn Corp.*,
Case No. 5:24-cv-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ....................10, 11, 12

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................19

*L.W.A. v. LinkedIn Corp.*,
Case No. 5:24-cv-08436-EJD, 2025 WL 2780788 (N.D. Cal. Sept. 20, 2025) ....................10

*Martin v. Sephora USA, Inc.*,
Case No. 1:22-cv-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ....................12, 13, 14, 15

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ....................13, 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................23, 25

*NovelPoster v. Javith Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................16

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................8, 11

*People v. Stipo*,
195 Cal.App.4th 664 (2011) ....................22

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................8, 11

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................23

*Revitch v. New Moosejaw, LLC*,
Case No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................22

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................24

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................15

*Rodriguez v. Google LLC*,
Case No. 20-cv-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................16, 17

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)....................21, 22

*Roe v. Amgen Inc.*,
No. 2:23-cv-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024)....................22, 23

*Sellers v. JustAnswer LLC*,
73 Cal.App.5th 444 (2021) ....................9

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ....................11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................22

*Smith v. Facebook, Inc.*,
745 Fed. Appx. 8 (9th Cir. 2018)....................11

*Smith v. YETI Coolers, LLC*,
754 F. Supp. Ed 933 (N.D. Cal. 2024)....................14, 20

*Snyder v. G6 Hospitality, LLC*,
Case No. 5:24-cv-02423, 2025 WL 2426613 (C.D. Cal. Aug. 18, 2023) ....................11

*Sussman v. American Broadcasting Co., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................23

*Tamraz v. Bakotic Pathology Assocs., LLC*,
No. 22-cv-0725, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022)....................18

*Turner v. Nuance Communications, Inc.*,
Case No. 22-cv-05827, 2024 WL 2750017 (N.D. Cal. May 28, 2024)....................16

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................16

*In re Whaleco Inc. Malware Litig.*,
Case No. 2:25-cv-04657, 2025 WL 391444 (C.D. Cal. Aug. 29, 2025) ....................10

*Wilson v. Rater8, LLC*,
Case No. 20-cv-1515, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ....................18

*Wright v. TrueCare Prop. Holdings, LLC*,
Case No. 3:25-cv-00786, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025)....................18

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 25

*Zarif v. Hwareh.com, Inc.*,
Case No. 23-cv-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 23

**Statutes**

18 U.S.C. § 2511(1) .......... 4

18 U.S.C. § 2511(1)(a)-(e) .......... 22

18 U.S.C. § 2511(2)(d) .......... 22, 23

Cal. Civ. Code § 56.05(j) .......... 17, 18

Cal. Civ. Code § 56.10 .......... 3, 17

Cal. Penal Code § 31 .......... 20, 21

Cal. Penal Code § 631 .......... *passim*

Cal. Penal Code § 631(a) .......... *passim*

Cal. Penal Code § 632 .......... *passim*

Cal. Penal Code § 632(a) .......... 20

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 7

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This lawsuit is one of many similar actions flooding California courts targeting a wide array of companies that own and operate websites that use technology to track consumers' interfaces on those websites. Here, Plaintiff alleges that Musely's purported use of tracking pixels, commonplace website enhancement tools embedded on the publicly available pages of Musely's website, www.musely.com ("Website"), violates the wiretapping provision of the California Invasion of Privacy Act ("CIPA") found in the state's Penal Code, the federal wiretapping provision of the Electronic Communications Privacy Act ("ECPA") found in the United States Penal Code, the Confidentiality of Medical Information Act ("CMIA"), and the California Constitution's right to privacy. Plaintiff's claims lack merit for several reasons.

First, Plaintiff consented to disclosure of her information. When she visited the Website and made a purchase, she was directed to Musely's Privacy Policy which advises that the Website uses cookies and pixels. Those policies clearly advised Plaintiff that Musely collects and discloses the personal information Plaintiff claims was disclosed here and that it utilizes cookies and pixels from third parties.

Second, Plaintiff has failed to establish a violation of Section 631 of CIPA, which was enacted nearly sixty (60) years ago to deter the wiretapping of telephones, not to open the floodgates to civil litigation over routine internet technologies. As this Court recently recognized CIPA's language "is ill-suited for application to internet communications." *Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025) (noting "[t]he language of CIPA is a total mess"). Musely is a party to the communications and thus, there can be no direct liability against Musely because a party cannot eavesdrop with itself. Indeed, recognizing such, Plaintiff instead seeks to impose derivative liability on Musely by claiming Musely aided and permitted various third-party social media websites to receive Plaintiff's personal information. The fatal flaw in Plaintiff's theory, however, is the FAC's failure to adequately allege any third-party violations of CIPA for which Musely could be derivatively liable. To the extent Plaintiff intends to rely on any third-party software vendor utilized by Musely, courts have routinely held

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

that such vendors function as an extension of the website owners. Plaintiff has also failed to adequately allege that any communications were intercepted "in transit." For these reasons, she cannot recover under Section 631 of CIPA.

Third, Plaintiff's CMIA claim likewise fails. The FAC is devoid of any facts showing substantive "medical information" was transmitted. Indeed, Plaintiff's FAC is purposefully vague on the alleged information disclosed and Plaintiff's conclusory allegations are simply insufficient to establish a CMIA violation. Fourth, the FAC is completely devoid of any facts which would satisfy the high bar required to establish a violation of the California Constitution. Plaintiff could not have had a reasonable expectation of privacy based on her agreement to the Musely's Privacy Policy. And, even if she did, the use of boilerplate terms such as "medical conditions," "medical concerns," and "treatment" does not meet required pleading standards.

Fifth, Plaintiff's Section 632 claim is insufficient because the FAC fails to allege facts supporting derivative liability or that Plaintiff's internet communications were confidential. And, finally, Plaintiff has failed to state a claim under the ECPA, a one-party consent statute. There is no dispute that Musely was a party to the communications and thus, Plaintiff cannot establish an unlawful interception. Her attempts to invoke the crime-tort exception to the ECPA fail under the prevailing case law.

Dismissal of the FAC with prejudice is warranted.

## II. STATEMENT OF ISSUES

1. Whether Plaintiff's consent to Musely's Privacy Policy bars her claims?

2. Whether Plaintiff has stated a claim under CIPA Section 631 where there is no showing of predicate liability by a third party, the party exception does not apply to software vendors, and the FAC fails to establish an interception while in transit?

3. Whether Plaintiff has stated a claim under the CMIA where she has failed to plead the disclosure of the requisite medical information?

4. Whether Plaintiff has stated a claim for invasion of privacy where she has failed to sufficiently allege a violation of a reasonable expectation of privacy?

5. Whether Plaintiff has stated a claim under CIPA Section 632 where the FAC fails

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

to allege facts supporting derivative liability or that Plaintiff's internet communications were confidential?

6. Whether Plaintiff has stated a claim under the ECPA where Musely was a party to the communications?

## III. STATEMENT OF FACTS

### A. Procedural History

Plaintiff, a resident of California, commenced this action on April 3, 2024 against Musely on behalf of herself and "all U.S. residents who have accessed and used" the Website. Doc. 1 at ¶ 1. Plaintiff's original Complaint alleged that Musely "aids, employs, agrees, and conspires with Meta to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information." *Id.* at ¶ 2. Specifically, Plaintiff claimed Musely assisted Meta in allegedly intercepting her communications through the deployment of software code, known as the Facebook Pixel, on the Website. *Id.* at ¶¶7, 30. The original Complaint asserted three counts against Musely: (1) violation of CIPA Section 631, Cal. Penal Code § 631(a); (2) violation of the CMIA, Cal. Civ. Code §56.10; and (3) invasion of privacy under California's Constitution. *Id.* at pp. 22-27.

Musely filed a Motion to Compel Individual Arbitration on May 24, 2024. Doc. 14. The Court denied the motion on October 11, 2024. Doc. 25. Musely appealed the denial of the motion to compel to the United States Court of Appeals for the Ninth Circuit on October 16, 2024. Doc. 26. On October 20, 2025, the Ninth Circuit entered a Memorandum Order affirming the denial of the motion to compel and remanded the matter to this Court. Following remand, Plaintiff filed her FAC on January 30, 2026. Doc. 49.

### B. Allegations in the FAC

Plaintiff asserts that Musely "specializes in selling 'custom prescription skincare' treatments" and "emphasizes that it is a provider of medical services, that 'offer[s] prescriptions; not products." *Id.* at ¶¶ 20, 21. Like the original Complaint, the FAC alleges that Musely "aids, agrees, and conspires with Meta," but also includes new allegations that Musely "aids, agrees, and conspires with . . . TikTok, and a host of other [unidentified] third parties to intercept"

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Plaintiff's communications. *Id.* at ¶ 2. According to the FAC, the Website hosted code for the Facebook Pixel, which Plaintiff alleges "'tracks the people and type of actions they take.'" *Id.* at ¶ 30. Plaintiff claims that when a user accesses the Website, "Meta's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Meta's servers" and that "secret and contemporaneous transmission contains the original GET request sent to the host website, along with additional data that the Facebook is configured to collect." *Id.* Plaintiff claims that "two sets of code [are] thus automatically run as part of the browser's attempt to load and read Defendant's Website – Defendant's own code and Facebook's embedded code." *Id.* "After" the information is collected and intercepted, Plaintiff alleges that "Meta process[es] it, analyze[s] it, and assimilate[s] it into datasets like Core Audiences and Custom Audiences." *Id.* at ¶ 39.

The FAC also alleges, for the first time, that the Website utilized the TikTok Pixel, which allegedly "capture[s] 'events' (any activity by a user that happens on a website)." *Id.* at ¶ 41. Plaintiff alleges that when a user "interact[s] with a webpage with the TikTok Pixel installed, the TikTok Pixel collects the 'Metadata and button clicks' (information about what the user clicked on—such as the specific URL address visited by the user—or text entered into the webpage), a timestamp for the event, and the visitor's IP address." *Id.* at ¶ 43. Plaintiff claims that TikTok "automatically receives the page URL, which discloses the treatment sought, and a hashed version of the patient's email address." *Id.* at ¶ 67. Once information is intercepted, Plaintiff asserts that TikTok "has the capability to use such information for its own purposes." *Id.* at ¶ 47.

The FAC asserts the same three counts alleged in the original Complaint and purports to add two new counts: (1) Count IV – violation of Section 632 of CIPA and (2) Count V – violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1). *Id.* at ¶¶ 120-152.

**C. Plaintiff's Consent to Musely's Privacy Policy**

Plaintiff alleges that in August 2023, she visited the Website to search for and purchase treatment for dark brown spots on the skin. *Id.* at ¶ 5. In making her purchase, Plaintiff answered questions regarding her skin condition to allow a doctor to write a prescription. *Id.* Plaintiff alleges that through the use of tracking pixels, communications which contained her

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

personally identifiable information ("PII"), protected health information ("PHI"), and "related confidential information" were intercepted. *Id.* at ¶ 7. Plaintiff alleges that after making a purchase on the Website, she "began receiving targeted advertisements from Musely and other advertisements related to prescription care on Facebook." *Id.* at ¶ 8.

To place an order on the Website, parties must complete a questionnaire related to their skin condition. *Id.* at ¶ 22. Thereafter, a doctor reviews the responses and prescribes a treatment product. *Id.* Patients, through the Musely app, continue to check in with an "eNurse" to continue their treatment. *Id.* When creating an account for purposes of purchasing a product and communicating with a doctor, users are presented with an uncluttered screen to "[c]reate a secure account to talk with your doctor." Declaration of Sara Anderson Frey ("Frey Decl.") at Exhibit 1. After inputting an email, creating a password, and inputting their name, users are presented with a clear, uncluttered statement that reads "By signing up, you agree to Musely's <u>Privacy Policy</u> and <u>Terms of Use</u>" before clicking on a gray button that says "Create Account." *Id.*




*Id.*

The underlined reference to the "<u>Privacy Policy</u>" is a direct hyperlink to the following page which contains Musely's Privacy Policy, shown by the red arrow on the below screenshot:

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101




Declaration of Steven Buchanan ("Buchanan Decl.") at Ex. 1.

Musely's "Privacy Policy describes the privacy practices that [Musely] follows when collecting and using information about" users from the Website, Musely app, and any other channel, platform, application, or mobile feature Musely operates. Frey Decl., Ex. 2 at p. 1. "It describes what information [Musely] gather[s] from [users] and others who visit or use the [Website], how [Musely] use[s] that information, and what [Musely] do[es] to protect it." Id. In all capital letters, the Privacy Policy states:

> BY CREATING AN ACCOUNT ON OUR PLATFORM OR OTHERWISE PROVIDING US WITH YOURS OR OTHERS' PERSONAL INFORMATION, YOU EXPRESSLY CONSENT TO THESE INFORMATION HANDLING PRACTICES AND YOU ACKNOWLEDGE AND CONFIRM THAT YOU HAVE PERMISSION TO PROVIDE US WITH ALL PERSONAL INFORMATION PROVIDED. IF YOU DO NOT AGREE WITH THIS PRIVACY POLICY OR OUR PARTICIPANT AGREEMENT, PLEASE DO NOT USE OR REGISTER FOR AN ACCOUNT ON THE PLATFORM

*Id.*

The Privacy Policy details the information collected through use of the Website, including personal information, medical information, automatically collected usage and device information, information from other sources, location information, user contributions, information about others, and social media. *Id.* at pp. 2-9. "Personal Information" includes identifiers (e.g., **name**, **IP address**, **email address**, social security number), personal information listed in the California Customer Records Statute (e.g., physical characteristics,

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

insurance information, bank account, **medical information**), protected class information (e.g., age, race, color, ancestry, **medical condition**, **physical or medical disability**), commercial information (e.g., products or services purchased), biometric information (e.g., genetic, physiological, behavioral, and biological characteristics, **health data**), internet and network activity (e.g., browsing and search history), geolocation data, sensory data, professional or employment-related information, non-public education information, and inferences from other personal information (e.g., preferences, behavior, aptitudes). *Id.* at pp. 2-6 (emphasis added).

The Privacy Policy advises that the Website uses cookies to collect information about a users' "browser and usage patterns, which may include [] IP address, browser type, browser language, referring/exit pages and URLs, pages viewed, links clicked, whether you opened an email, and information about the device" used to access the Website. *Id.* at pp. 6-7. The Privacy Policy also advises that the Website uses pixels "to automatically record certain technical information" about a users' interactions with the Website. *Id.* at p. 7. The Privacy Policy also details information collected through third-party analytics providers such as Facebook. *Id.* at p. 9. A link to Facebook's privacy policy, including opt-out settings, is provided. *Id.* at p. 10. In addition to detailing what information is collected, the Privacy Policy details how the information is used and disclosed. *Id.* at pp. 10-13. Users are given notice that "Personal Information" may be used or disclosed for a variety of purposes including marketing and promotions. *Id.* at p. 10-11. Website visitors are also advised that they can choose not to provide Personal Information, to opt-out of the sharing of Personal Information, and to refuse all cookies. *Id.* at pp. 15-18. Instructions on exercising these rights are detailed. *Id.*

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006). A

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal courts follow a two-pronged approach when deciding a motion to dismiss. First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts need not "accept as true a legal conclusion couched as a factual allegation." *Id.* at 678-79. Second, while the court must accept well-pleaded factual allegations as true, courts must also "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" there is no plausible claims for relief. *Id.*

## V. LEGAL ARGUMENT

### A. Plaintiff Consented to Disclosure of Personal Information

Plaintiff cannot state any claim for invasion of privacy—whether under the ECPA, CIPA, CMIA, or California Constitution—because she consented to disclosure of her personal information. Lack of consent is an element of Plaintiff's ECPA, CMIA, and CIPA claims and a defense to her state common law claims. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 (N.D. Cal. 2021). While there may be "subtle differences" among consent doctrines, "the question under [each] is essentially the same: Would a reasonable user who viewed [the defendant's] disclosures have understood that [it] was collecting" the information at issue? *Perkins v. LinkedIn Corp*., 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014).

"To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1013-14 (9th Cir. 2024) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023)). Although assent may be manifested through conduct, "'[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id.* at 1014 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2023)).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

These principles apply with equal force to contracts formed online. *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1294 (E.D. Cal. 2024). Internet contracts "are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh*, 100 F.4th at 1014 (quoting *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 463 (2021)). Scrollwrap agreements, which require a user to scroll through terms of use and click a button agreeing to same, and clickwrap agreements, which require a user check a box before proceeding, are at one end of the spectrum. *Cavanaugh*, 738 F. Supp. 3d at 1294. These types of agreements "are generally enforced because the user received notice of the terms put forth and asserted to those terms." *Id.* Browsewrap agreements, which provide a hyperlink and indicate users manifest assent by continuing to browse the website, are on the other end of the spectrum. *Id.* "Courts are more reluctant to enforce these agreements." *Id.*

"Somewhere in the middle are 'sign-in' wrap agreements," which "include a textual notice that a user will be bound by the terms of use [] by either creating or logging in to an account or by placing an order; however, the user is not required to review the terms and conditions or otherwise manifest their assent." *Id.* Sign-in wrap agreements are enforceable "if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that ambiguously manifests his or her assent to those terms.'" *Keebaugh*, 100 F.4th at 1014 (quoting *Berman*, 30 F.4th at 856). The Musely Website falls into this middle category.

**1. The Musely Website Provided Reasonably Conspicuous Notice of the Terms of the Privacy Policy.**

"To be conspicuous, notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 924 (N.D. Cal. 2024) (quoting *Berman*, 30 F.4th at 856). Courts look to a variety of factors including text size, text color compared to the background it appears against, location of the text and proximity to any box or button that must be clicked to continue use of the website, obviousness or any associated hyperlink, and whether the screen is

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

cluttered or otherwise obscures the textual notice. *Cavanaugh*, 738 F. Supp. 3d at 1295.

Here, there can be no doubt that the visual aspects of Musely's notice of its Privacy Policy are reasonably conspicuous. Visitors are advised that they must create an account to communicate with doctors. Frey Decl. at Ex. 1. Communicating with doctors is a necessary step to making a purchase. Doc. 49 at ¶49. To create an account, visitors are presented with an uncluttered screen requiring them to input their email, create a password, and input their name. Frey Decl. at Ex. 1. Thereafter, users are advised that "By signing up, you agree to Musely's Privacy Policy and Terms of Use" located before a gray button that says "Create Account." *Id.* The text of this notice is not hidden or obscured by graphics and the first letter of each word is capitalized. *Id.* The black lettering stands out against the white background. *Id.* Unlike a traditional browsewrap agreement, the notice is not buried at the bottom of the Website. The underlined "Privacy Policy" hyperlink sends users directly to the Musely's Privacy Policy, Buchanan Decl. at ¶ 6 and Ex. 1, which sets forth in detail the information collected through use of the Website, how that information is used and shared, and how users may opt-out, Frey Decl. at Ex. 2. Similar hyperlinks have been found to provide reasonably conspicuous notice. *See L.B. v. LinkedIn Corp.*, Case No. 5:24-cv-06832-EJD, 2025 WL 2899514, at *10 (N.D. Cal. Oct. 10, 2025) (in context of "clean and simple format of page," underlined hyperlink that capitalized first letter of each word provided notice that continued use of website constituted agreement to cookie policy); *L.W.A. v. LinkedIn Corp.*, Case No. 5:24-cv-08436-EJD, 2025 WL 2780788, at *4 (N.D. Cal. Sept. 20, 2025) (underlined hyperlink on uncluttered page was reasonably conspicuous); *In re Whaleco Inc. Malware Litig.*, Case No. 2:25-cv-04651, 2025 WL 3691444, at *3 (C.D. Cal. Aug. 29, 2025) (while text of hyperlink was small, it was proportional to text and underlined); *Keebaugh*, 100 F.4th at 1020 (hyperlink located "[d]irectly beneath the operative Play button" that advised "continued use" constituted acceptance of the terms of service was reasonably conspicuous); *Oberstein*, 60 F.4th at 517 (notices "located directly on top of or below each action button" were reasonably conspicuous because they were "not buried on the bottom of the webpage or placed outside the action box").

Because the FAC "fail[s] to plead facts sufficient to support [Plaintiff's] allegation that

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

the [Website] 'does not provide constructive notice of its privacy policy to consumers,'" the FAC must be dismissed. *L.B.*, 2025 WL 2899514, at * 11.

**2. Plaintiff Manifested Assent to the Privacy Policies**

"[W]hether the user takes some action that unambiguously manifests assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. The assent necessary "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *DeLeon v. Verizon Wireless, LLC*, 207 Cal.App.4th 800, 813 (2012).

In *Smith v. Facebook, Inc.* ("*Smith II*"), 745 Fed. Appx. 8 (9th Cir. 2018), the Ninth Circuit affirmed the district court's finding that the plaintiff consented to Facebook's Cookies Policy and Privacy Policy, holding that "[a] reasonable person viewing these disclosures would understand" Facebook's practices of collecting and using data. District courts have "consistently" held that a website's terms and privacy policies "can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims," including CIPA. *Silver v. Stripe Inc.*, No. 4:20-cv-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing claims where privacy policy "explicitly state[d] that a consumer's information may be provided to [the defendant's] 'partners"'); *see also Snyder v. G6 Hospitality, LLC*, Case No. 5:24-cv-02423, 2025 WL 2426613, at *4 (N.D. Cal. Aug. 18, 2025) (reasonable person would have understood that he agreed to privacy policy by clicking box); *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (plaintiff consented to sharing personal data by agreeing to privacy policy); *Perkins*, 53 F. Supp. 3d at 1213 (plaintiffs consented to collection of information "[i]n light of the clarity of the disclosure, the proximity of the disclosure to the wrongful conduct, and the ability to opt out").

Here, there can be no dispute that Plaintiff unambiguously assented to the terms of Musely's data collection policies in connection with purchases she admits she made on the Website. Doc. 49 at ¶ 5. Communicating with doctors is a necessary step to making a purchase. *Id.* at ¶49. To create an account, visitors are provided with an uncluttered screen requiring them to input their email, create a password, and input their name. Frey Decl. at Ex. 1. Thereafter,

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

users are advised that "By signing up, you agree to Musely's Privacy Policy and Terms of Use" located before a gray button that says "Create Account." *Id.*

Plaintiff's conclusory allegations that she "never consented, agreed, authorized, or otherwise permitted" Musely to collect and disclose her information are insufficient to state a plausible claim for relief. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (dismissing CIPA claim and noting that "allegation that the recordings 'were made without Plaintiffs' consent' is conclusory"). Those allegations are further belied by the broad disclosures about data collection and the use of third-party cookies in the Musely Privacy Policy. Frey Decl. at Ex. 1 and Ex. 2. A reasonable user who read the Privacy Policy would have understood Musely collected and disclosed the personal information at issue here. The FAC fails to plausibly allege the requisite lack of consent and dismissal is warranted.

**3. The Website Informed Plaintiff the Information Allegedly Improperly Intercepted Would be Collected.**

The Privacy Notice goes into great detail as to the type of information that Musely collects, including the very information Plaintiff alleges was improperly intercepted, i.e., "medical conditions," "medical concerns," "treatment," prescription products for those conditions, and "physical condition." *Compare* Doc. 49 at ¶¶ 107, 108 with Frey Decl., Ex. 2 at pp. 2-9. The FAC "fail[s] to plead facts sufficient to show a reasonable expectation that" Plaintiff's information would not be shared. *L.B.*, 2025 WL 2899514, at *11.

**B. Plaintiff Fails to State a CIPA Section 631 Claim (Count I)**

Count I asserts a violation of Section 631(a) of CIPA, California's wiretap statute. To plead a claim under Section 631(a), a plaintiff must allege facts showing someone "willfully" intercepted the contents of his or her communications while "in transit." Cal. Pen. Code § 631(a). Section 631(a) contains three operative clauses, each of which cover distinct and mutually independent patterns of conduct: (1) intentional wiretapping; (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire; and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities. *Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355, 2023 WL 2717636, at *6

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

(E.D. Cal. Mar. 30, 2023) (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021)). There is a fourth basis for liability for anyone "'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a)). It is this fourth category which Plaintiff alleges Musely violated, by "aid[ing], agree[ing] with, and conspir[ing] with Meta to track and intercept Plaintiff's and Class Members' internet communications while accessing www.memorialcare.org." Doc. 49 at ¶ 96. At the outset, nowhere in the FAC does Plaintiff allege that Musely owns, operates, or is otherwise affiliated with www.memorialcare.org and for this reason alone, dismissal is warranted. Even assuming this was a typographical error, Count I should be dismissed.

**1. Plaintiff Fails to Adequately Allege Predicate/Direct Liability.**

A party will be subject to derivative liability under the fourth clause of Section 631(a) only "where [a] third party is directly liable for recording the communications in violation of the first, second, or third clauses of § 631(a)." *Martin*, 2023 WL 2717636, at *12. In other words, "a defendant cannot be liable for aiding and abetting another party in violation of this clause absent a predicate violation of Section 631(a)'s first three clauses." *Gutierrez v. Converse Inc.*, No. CV 23-6547, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024). Plaintiff fails to sufficiently alleged predicate violations of Section 631 by a third party and thus, her claim fails.

The only third party Plaintiff claims Musely conspired with to violate Section 631 is Meta.[2] Doc, 49 at ¶ 96. However, Plaintiff alleges that it was *Musely* who "chose to include the Facebook Pixel on its Website," *Id.* at ¶ 31. Indeed, the allegations in the FAC relate to Musely's *own conduct*, not the conduct of a third party and they "cannot be a basis for liability because a participant to a conversation cannot eavesdrop on their own conversation." *Garcia v. Build.com, Inc.*, Case No. 22-cv-01985, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023)

---

[2] Plaintiff does allege that Musely conspired with "a host of other third parties." Doc. 49 at ¶ 2. Vague allegations concerning unidentified and unnamed third parties are insufficient to put Musely on notice of Plaintiff's claims. *Iqbal*, 556 U.S. at 663.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

(dismissing CIPA claim); *see also Martin*, 2023 WL 2717636, at *12 (dismissing CIPA claim where all of plaintiff's allegations pertained to defendant and no actions were attributed to alleged third-party eavesdropper). No derivative liability can attach here because the Amended Complaint fails to allege sufficient facts alleging violation by Meta.

Furthermore, even if Plaintiff had alleged facts sufficient to make it plausible that Meta violated one of the first three clauses of Section 631, liability under clause four "only arise[s] if the defendant *knew* the perpetrator intended to commit the crime and *intended* to aid and abet the perpetrator in the crime." *Esparza v. UAG Escondido A1 Inc.*, Case No. 23cv0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (emphasis in original). The fact that a defendant paid a vendor to intercept messages is insufficient to establish the necessary scienter for a Section 631 aiding and abetting claim. *Heiting v. Taro Pharms. USA, Inc. ("Heiting I")*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023).

In *Smith v. YETI Coolers, LLC* ("*YETI*"), 754 F. Supp. 3d 933 (N.D. Cal. 2024), this Court confirmed the need to show knowledge and intent for an aiding and abetting claim under the fourth clause of Section 631, noting that while Section 631(a) "does not necessarily incorporate the common law requirement for aiding and abetting simply because it contemplates liability where an individual or entity provides 'aid,'" there is other language in the fourth clause that "does require some level of knowledge and intent." *Id.* at 942. Specifically, this Court held that the clause prohibiting "a defendant from aiding, agreeing with, or employing a third party '***to*** unlawfully do, or permit, or cause' the third party to act in violation of the wiretapping statute . . . indicates that the defendant must be acting with a third party *in order to* have the third party perform acts that violate the statute." *Id.* (emphasis in original). This language, "at the very least . . . requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Id.* This Court held that the plaintiff's allegations that the defendant was aware that the third party collected consumers' information and assisted the third party in doing so did "not contain sufficient facts for the Court to draw a plausible inference that Defendant knowingly agreed with or employed [the third party] to engage in conduct that violated the wiretapping statute." *Id.* at 943.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Plaintiff's FAC is devoid of allegations sufficient to establish the requisite knowledge and intent for her aiding and abetting claim. There are no facts showing Musely knew about any allegedly unlawful intent to intercept Plaintiff's communications, possessed any intent to help Meta intercept any alleged communications, or engaged in conduct that assisted the achievement of the alleged crime. As such, she has failed to state a claim under Clause 4 of Section 631(a).

**2. CIPA's Party Exception Applies to Musely's Vendors**

CIPA's wiretapping provision is "aimed at . . . eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). As such, CIPA contains an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). This exemption has been routinely extended to software vendors. *Martin*, 2023 WL 2717636, at *13 (holding third-party vendor is "an extension of the company"). "[A] vendor [that] provides a software service that captures its clients' data, hosts it on [the vendor's] servers, and allows the clients to analyze their data" is simply "an extension" of the client" and "not a third-party eavesdropper" subject to liability under the CIPA. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021). In other words, a company's use of a website vendor does not constitute eavesdropping under Section 631 where the vendor is a tool, agent, or extension of the company. *Id.* at 832.

To assert a claim under Section 631, "a plaintiff must allege, in non-conclusory fashion, facts demonstrating that the third-party software company possesses the ability to act as an independent entity capable of using the recorded information for some other means." *Heiting v. athenahealth, Inc.*, No. 2:23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024) (finding conclusory allegations that third party could use communications to collect information about a specific user and create a transcript to enhance its own business were "too general and conclusory to support a reasonable inference that [the third party] had the capability to use the communications for any purpose beyond providing it to" the defendant). Here, Plaintiff's vague allegations that Meta could use data for targeted marketing are too general to find Meta is a third-party wiretapper. As such, Plaintiff's CIPA claim should be dismissed.

Musely acknowledges "[t]here is a split in the Ninth Circuit on the standard used to

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

define a third party" under the CIPA. *Turner v. Nuance Communications, Inc.*, Case No. 22-cv-05827, 2024 WL 2750017, at *9 (N.D. Cal. May 28, 2024); *Heerde v. Learfield Communications, LLC*, 741 F. Supp. 3d 849, 860 (C.D. Cal. 2024). This Court should follow the holdings of those courts that have held vendors such as Meta are not third parties.

**3. Plaintiff Does Not Plausibly Allege Interception "While In Transit"**

Section 631(a) only applies where the "contents or meaning" of a communication is intercepted "in transit." Cal. Penal Code § 631(a). A plaintiff must plausibly allege a third party "read one of his communications while it was still in transit, i.e., *before it reached its intended recipient*." *Mastel*, 549 F. Supp. 3d at 1137 (emphasis added). Because Plaintiff's FAC fails to allege sufficient facts establishing a third party intercepted communications "in transit," Count I must be dismissed for this additional reason.

Section 631(a) requires proof that a third party listened to a communication "*while* the same is in transit or passing over any wire, line, or cable." *Heiting v. Taro Pharms. USA, Inc. ("Heiting II")*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (Section 631(a) requires "real time interception"). In the context of "modern internet communications," courts recognize the speed in which those communications are sent and held liability for same under wiretapping status is "undoubtedly limited." *NovelPoster v. Javith Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014) (noting internet communications travel so quickly, there is only an incredibly narrow window during which an interception could occur). As such, courts within the Ninth Circuit have interpreted the "in transit" requirement of Section 631(a) "narrowly." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) (finding allegations that "third party . . . secretly intercept[s] in real time, eavesdrop[s] upon, and store[s] transcripts" and defendant "automatically records and creates transcripts of all such private conversations" did not specifically allege messages "were intercepted ***while in transit***." *Id.* at 1110 (emphasis added).

Here, while Plaintiff uses the word "intercept" repeatedly throughout the FAC, stating the word over and over "is simply not enough without the addition of specific facts that make it plausible" that her data was intercepted in transit. *Rodriguez v. Google LLC* ("*Rodriguez II*"),

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Case No. 20-cv-04688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). Plaintiff alleges "[w]hen a user accesses a website hosting the Facebook Pixel, Meta's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Meta's servers." Doc. 49 at ¶ 30. "This second secret and contemporaneous transmission" is then "sent to the host website" and "two sets of code [are] thus automatically run as part of the browser's attempt to load and read Defendant's Website—Defendant's own code and Facebook's embedded code." *Id.* She further alleges, however, that it is "[**a**]**fter** collecting and intercepting the information" that "Meta processe[s], analyze[s], and assimilate[s] it into datasets." *Id.* at ¶ 39 (emphasis added). Nearly identical allegations have been found insufficient to establish an interception. *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Jan. 5, 2023). The same result should be reached here.

**C. Plaintiff Fails to State a CMIA Claim (Count II)**

Plaintiff alleges Musely violated Section 56.10 of the CMIA by disclosing "several pieces of information regarding its patients' use of Defendant's Website, which, on information and belief, included, but was not limited to: patient medical conditions, medical concerns, treatment patients were seeking, and the fact that patients were seeking a prescription for those treatments." Doc. 49 at ¶ 107. Section 56.10 states, in relevant part, that "[n]o provider of health care . . . shall disclose ***medical information*** regarding a patient of the provider of health care . . . without first obtaining an authorization." Cal. Civ. § 56.10 (emphasis added). Here, Plaintiff's CMIA claim must be dismissed because she has failed to allege facts showing "medical information" has been transmitted.

The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." *Id.* at § 56.05(j). Medical information is "individually identifiable" if it "includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

information that, alone or in combination with other publicly available information, reveals the identity of the individual." *Id.* In other words, "medical information" under the CMIA is "***substantive information*** regarding a patient's medical condition or history that is combined with individually identifiable information." *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal.App.4th 430, 434 (2014) (emphasis added).

The medical information covered by CMIA does not "'mean just any patient-related information held by a health care provider, but must be 'individually identifiable information' and also include 'a patient's medical history, mental or physical condition, or treatment.'" *Gray v. Luxottica of Am., Inc.*, Case No. 8:24-CV-00160, 2024 WL 5689566, at *8 (C.D. Cal. Dec. 16, 2024) (quoting *Eisenhower*, 226 Cal.App.4th at 435). The definition of medical information, therefore, "'does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care.'" *Id.* Nor does it apply simply because a person was a patient at the facility at some point in time. *Id.* "In other words, 'the information must be 'substantive,' rather than merely administrative.'" *Id.* (quoting *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725, 2022 WL 16985001, at *4 (S.D. Cal. Nov. 16, 2022)) (noting "appointment information is not medical information"). In *Gray*, the court held that data related to the type of treatment sought did not constitute medical information under the CMIA. *Id.* at *9.

Here, Plaintiff alleges that Musely "disclosed to Meta several pieces of information regarding its patients' use of" the Website, including "patient medical conditions, medical concerns, treatment patients were seeking, and the fact that patients were seeking a prescription for treatment of those conditions." Doc. 49 at ¶ 107. Similar allegations have been found insufficient. *Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *5 (S.D. Cal. Nov. 21, 2025) (allegations that "protected medical information" was revealed were insufficient to establish CMIA claim); *Wilson v. Rater8, LLC*, Case No. 20-cv-1515, 2021 WL 4865930, at *1 (S.D. Cal. Oct. 18, 2021) (disclosure of name, cell phone number, physician name, appointment information, discharge date, and discharge time did not violate CMIA).

The FAC fails to allege any specific "medical history, diagnosis, or care" that was disclosed. *Eisenhower*, 226 Cal.App.4th at 435. Conclusory allegations that appointment

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

information was disclosed is simply insufficient to establish a CMIA violation and thus, Count II must be dismissed. S*ee also Doe v. MKS Instruments, Inc.*, No. SACV2300868, 2023 WL 9421115, at *1 (C.D. Cal. Nov. 3, 2023) (holding allegation that "information about disabilities, health and medical conditions" was disclosed was conclusory and did not constitute "medical information" under CMIA); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (dismissing CMIA claim where plaintiff failed to allege "any specificity as to what medical information was allegedly disclosed or when it was disclosed").

**D. Plaintiff Fails to Allege Violation of the California Constitution (Count III)**

Count III of the FAC asserts a claim for violation of the right to privacy under California's Constitution. A privacy claim under the California Constitution requires a showing of (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009).

At the outset, because Plaintiff agreed to a Privacy Policy that allowed Musely to collect certain personal information—including medical information, physical or medical disability, and health data, Frey Decl. at Ex. 2—she cannot establish that she had a reasonable expectation of privacy under the circumstances. In other words, she cannot claim that Musely invaded her privacy by collecting information *she already agreed to share*.

The California Constitution sets "a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). This Court has consistently held that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' invasion of privacy. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022), *aff'd* No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (collection of information about a user's menstrual cycle, religion, political affiliation, or sexual preference did not give rise to invasion of privacy); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent not an egregious breach of social norms); *Low*, 900 F. Supp. 2d at 1025 (disclosure of social security numbers not offensive); *B.K.*, 721 F. Supp. 3d at

1061 (disclosure of information about medical conditions, providers sought, and appointments did not invade privacy).

Plaintiff's FAC is purposefully vague as to what information was collected that allegedly violated her privacy. Plaintiff uses boilerplate terms such as "medical conditions," "medical concerns," and "treatment." Doc. 49 at ¶ 107. These vague allegations are insufficient to meet the high bar required to establish a constitutional violation. As a matter of law, the FAC fails to state sufficient facts demonstrating the disclosure of information which would result in "serious harm" to Plaintiff or that would constitute an egregious breach of social norms.

**E. Plaintiff Fails to State a CIPA Section 632 Claim (Count IV)**

The FAC alleges, for the first time, that Musely violated Section 632 of CIPA, which prohibits "intentionally and without the consent of all parties to a confidential communications, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a). A "confidential communication" is defined as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto," but does <u>not</u> include any communication that the parties "may reasonably expect . . . be overheard or recorded." *Id.* at § 632(c). For the following reasons, the FAC fails to sufficiently plead a claim under Section 632.

**1. Plaintiff Fails to Adequately Allege Derivative Liability.**

Plaintiff does not allege that Musely eavesdropped on her communications. To the contrary, Plaintiff alleges that she expected her communications "to be **confined to Defendant**." Doc. 49 at ¶ 124 (emphasis added). She only alleges that "Meta and other third parties . . . secretly eavesdrop[ped] upon or record[ed]" her communications with Musely. *Id.* Because Plaintiff does not allege that *Musely* "us[ed] an electronic amplifying or recording device to eavesdrop upon or record" her communications, she has failed to plead a claim under Section 632. Cal. Penal Code § 632(a).

To the extent Plaintiff is attempting to make a derivative claim under Section 632, "the text of Penal Code § 632 does not expressly provide for derivative liability." *YETI*, 754 F. Supp. 3d at 944. Section 31 of the Penal Code does provide that "'[a]ll persons concerned in the





Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

commission of crime . . . or [who] aid and abet in its commission . . . are principals in any crime so committed.'" *Id.* (quoting Cal. Penal Code § 31). Courts have cited to Section 31 to "imput[e] the civil liability standard for aiding and abetting to determine the scope of derivative liability" under Section 632. *Id.* Specifically, courts have looked to the common law definition of aiding and abetting the commission of a crime which requires a person "'(a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Id.* (quoting *Esparaza*, 2024 WL 559241, at *6) (internal citations omitted).

To establish derivative liablity under Section 632, Plaintiff was required to allege Musely had "knowledge of the other's conduct and must have provided substantial assistance." *Id.* Count IV is completely devoid of any such allegations. Rather, the allegations in Count IV relate solely to the conduct of Meta and other unidentified "third parties."[3] Because "Plaintiff did not plead sufficient facts to support a plausible inference that [Musely] had knowledge of [Meta's] conduct violating the statute, let alone had an intent or purpose of aiding it substantially," Count IV must be dismissed. *Id.* (dismissing Section 632 claim based on derivative liability).

**2. Plaintiff's Internet Communications Were Not Confidential.**

Even if Plaintiff had sufficiently pleaded derivative liability under Section 632—which she has not—her Section 632 claim still requires dismissal because her internet communications were not confidential.

Section 632 applies only to confidential communications. A communication is confidential under Section 632 only if a party has "'an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Rodriguez v. Google, LLC ("Rodriguez*

---

[3] *See, e.g.*, Doc. 49 at ¶ 126 ("Meta and other third parties eavesdropped and/or recorded confidential communications"); ¶ 128 ("Meta and other third parties utilized Plaintiff's and Class Members sensitive personal and health information for their own purposes"); ¶ 130 (Plaintiff's "sensitive data has been collected, viewed, accessed, stored, by Meta and other third parties").





Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*I")*, No. 20-cv-04688, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (quoting *Flanagan v. Flanagan*, 27 Cal.4th 766, 776-77 (2002)). California does not recognize an expectation of privacy regarding internet communications. *People v. Stipo*, 195 Cal.App.4th 664, 669 (2011) ("Internet users have no expectation of privacy in . . . the websites they visit."). As such, courts analyzing Section 632 "'have developed a presumption that internet communications do not reasonably give rise'" to an expectation of privacy. *Rodriguez I*, 2021 WL 2026726, at *7 (quoting *Revitch v. New Moosejaw, LLC*, Case No. 18-cv-06827, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)). To assert a reasonable expectation of privacy in internet communications, a plaintiff "must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Id.* Plaintiff has not pleaded such "unique, definite circumstances." Thus, Plaintiff has failed to state a claim under Section 632.

**F. Plaintiff Fails to State a Federal Wiretap Claim (Count V)**

Count V alleges violation of the ECPA—the Federal Wiretap Act—which prohibits the unauthorized interception of electronic communications. 18 U.S.C. § 2511(1)(a)-(e). To state a claim under the ECPA, a plaintiff must allege the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023). Plaintiff's claim fails because she has not establish that any communication has been unlawfully intercepted by Musely.

The ECPA is a one-party consent statute, meaning that there is no liability where "one of the parties to the communication has given prior consent" to the interception. 18 U.S.C. § 2511(2)(d); *see also Smith v. Facebook, Inc.* ("*Smith I*"), 262 F. Supp. 3d 943 955 (N.D. Cal. 2017) (ECPA "only requires one party to the communication to consent to an interception"). Courts have not hesitated to dismiss ECPA claims in similar cases, including suits involving the use of pixels by healthcare providers. *See, e.g., Roe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (dismissing ECPA claim because biopharmaceutical company "as the creator and operator of its website, consented to the use of data collection tools it installed on its website"); *B.K.*, 721 F. Supp. 3d at 1065 (dismissing ECPA claim where hospital "was the party that was meant to, and did, receive Plaintiffs' communications"); *Doe I v.*

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Google LLC*, No. 23-CV-02431, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (health care provider consented to use of tracker and thus, plaintiff was unlikely to succeed on merits of ECPA claim).

Here, Plaintiff alleges that Musely "chose to include the Facebook Pixel on Website," giving rise to the inference that Musely, as owner and operator of its Website consented to the use of the data collection tools it installed on the website. Doc. 49 at ¶ 31. Moreover, Plaintiff alleges that the communications were "between Plaintiff and Class Members and the Website." *Id.* at ¶ 136. These allegations are "self-defeating." *Roe*, 2024 WL 2873482, at *6. Because Musely was a party to the communications, Plaintiff cannot recover under the ECPA.

Apparently cognizant of this fatal flaw, Plaintiff tries to invoke the crime-tort exception to the ECPA by alleging Musely intercepted contents "for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, invasion of privacy, among others." Doc. 49 at ¶ 146. The crime-tort exception operates as an exception to the one-party consent rule where a "communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). The exception applies only where there is "sufficient evidence to show 'the *purpose* for the interception—its intended use—was criminal or tortious.'" *Doe I*, 2023 WL 6882766, at *2 (quoting *Sussman v. American Broadcasting Co., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)) (emphasis in original). "It is not enough for the interception itself to have violated the law, the interception must be 'done for the purpose of facilitating some further impropriety'" for the crime-tort exception to apply. *Id.* A plaintiff "'must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'" *Zarif v. Hwareh.com, Inc.*, Case No. 23-cv-0565, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025) (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (internal citations omitted)).

Plaintiff alleges that by using the Facebook Pixel, Musely violated HIPAA and invaded users' privacy. Doc. 49 at ¶¶ 142, 143. Neither of these acts, however, is "separate and independent from the act of recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Rather, those supposed violations occur through the act of

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

interception itself and therefore, do not fall within the statutory exception. *Id.*

To survive a motion to dismiss, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself." *Doe v. Talkiatry Mgmt. Svcs., LLC ("Talkiatry Mgmt."),* __ F. Supp. 3d __, No. 5:25-cv-00781, 2026 WL 206483, at *2 (C.D. Cal. Jan. 22, 2026) (emphasis in original). In *Talkiatry Mgmt.*, the plaintiff, like Plaintiff here, alleged that the defendant engaged in an illegal interception of individually identifiable health information to a third party in violation of HIPAA and did so to bolster its own advertising and gain a benefit. *Id.* at *2. The court granted the defendant's motion to dismiss, finding that the complaint "does not adequately allege Defendant's purpose to commit an independent criminal or tortious act to overcome the party exemption to ECPA liability." *Id.* at *3. In doing so, the court found that the complaint failed to allege that the defendant "intercepted and/or disclosed this information with violations of HIPAA as the '*primary motivation or a determining factor*.'" *Id.* (quoting *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024)) (emphasis added). The court also noted the conduct alleged was not "*per se* unlawful" because HIPAA allows organization to use third-party tracking tools. *Id.* The court further remarked that "other district courts have found that mere collection of personal information for market research and advertising was not for the purpose of committing a crime or tort." *Id.*; *see also Doe v. Kaiser Foundation Health Plan, Inc.*, Case No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (finding alleged violation of HIPAA "was not the purpose of the alleged interception" and thus, crime-tort exception did not apply).

Like the plaintiff in *Talkiatry Mgmt.*, Plaintiff here fails to allege sufficient facts demonstrating that violating HIPAA was Musely's "primary motive or a determining factor." 2026 WL 206483, at *3. To the contrary, Plaintiff alleges throughout the FAC that Musely's purpose in utilizing tracking technologies is "advertising." *See, e.g.* Doc. 49 at ¶35 (Facebook Pixel helps Defendant with "advertising"), ¶144 (confidential information is "monetized for targeted advertising purposes"). Plaintiff's boilerplate, conclusory allegations that Musely utilized pixels for the purpose of "committing a criminal or tortious act" and "invading . . .

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

privacy" fall short of the requirement of "plead[ing] sufficient facts" to support a finding that FAC's primary purpose was violating HIPAA or invading Plaintiff's privacy." *Talkiatry Mgmt.* 2026 WL 206483, at *2.

Plaintiff further alleges that Musely intercepted communications "for financial gain" and to "increase [its] profit margins." Doc. 49 at ¶ 148. Acting for a commercial gain, however, is not a criminal or tortious purpose. "Multiple courts in this district have found that the crime-tort exception to the [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797; *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (allegations that defendant collected data to generate revenue were insufficient to invoke crime-tort exception).

The FAC fails to sufficiently plead the crime-tort exception. Musely's consent to the use of the Facebook Pixel on its Website, therefore, bars Plaintiff's ECPA claim. *Rodriguez I*, 2021 WL 2026726, at *6 ("'consent of one party is a complete defense'" to ECPA claim) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). Count V must be dismissed.

## VI. CONCLUSION

For all the reasons set forth above, Defendant Trusper, Inc. d/b/a Musely respectfully requests that this Honorable Court grant its Motion to Dismiss and enter an order dismissing all claims against it with prejudice.

Dated: February 27, 2026

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By: /s/ *Sara Anderson Frey*
Timothy K. Branson
Sara Anderson Frey (pro hac vice)
Attorneys for Defendant
TRUSPER, INC. D/B/A MUSELY