TIMOTHY K. BRANSON (SBN 187242)
tbranson@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7441
Facsimile: (619) 696-7124

SARA ANDERSON FREY (pro hac vice)
sfrey@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone: (215) 717-4009
Facsimile: (215) 693-6650

Attorneys for Defendant
TRUSPER, INC. D/B/A MUSELY

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLA RAMIREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRUSPER, INC. d/b/a MUSELY<br><br>Defendant. | Case No. 5:24-cv-02012-EJD<br><br>**DEFENDANT TRUSPER, INC. D/B/A MUSELY'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: June 4, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 4 – 5th Floor<br>Judge: Honorable Edward J. Davila<br><br>Action Filed: April 2, 2024 |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT IN REPLY ..... 1

A. Plaintiff's Consent to Disclosure of Her Personal Information Bars Her Claims ..... 1

1. Musely's Notice of its Privacy Policy is Reasonably Conspicuous ..... 1

2. Plaintiff Unambiguously Manifested Her Assent ..... 6

3. The Privacy Policy Disclosed the Activity at Issue ..... 7

B. The Amended Complaint Fails to Sufficiently Plead Violation of CIPA Section 631 ..... 9

1. Plaintiff Fails to Sufficiently Allege the Requisite Intent ..... 9

2. The Court Should Apply the Vendor Exception ..... 10

3. Plaintiff's Conclusory Allegations Do Not Establish Interception of Contents of Communications "While In Transit" ..... 10

C. Plaintiff Fails to Allege Disclosure of Substantive Medical Information ..... 11

D. Plaintiff Had No Reasonable Expectation of Privacy and Cannot Seek Recovery Under the California Constitution ..... 12

E. Plaintiff's Section 632 Claim Fails as a Matter of Law ..... 13

1. Plaintiff Does Not Allege that Musely Eavesdropped on Her Communications ..... 13

2. Plaintiff's Voluntary Internet Communications Were Not Confidential ..... 14

F. The Amended Complaint Fails to Plead Sufficient Facts Supporting an Inference that Musely's Primary Motive was an Independent Criminal Act ..... 14

III. CONCLUSION ..... 15

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2023) .......... 2, 3

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 8

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 3, 4, 5, 7

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 9, 11, 13

*Doe I v. Google LLC*,
No. 23-CV-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .......... 9

*Doe v. Talkiatry Mgmt. Svcs., LLC*,
__ F. Supp. 3d __, No. 5:25-cv-00781, 2026 WL 206463 (C.D. Cal. June 22, 2026) .......... 14, 15

*Esparza v. UAG Escondido A1 Inc.*,
Case No. 23cv0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 9

*Godun v. JustAnswer, LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 5, 6

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 13

*In re Guidant Corp. Implantable Defibrillators Litig.*,
MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009) .......... 1

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10

*Haage v. Zavala*,
158 N.E.3d 1171 (Ill. App. 2020) .......... 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022), *aff'd* No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 8

*Heerde v. Learfield Communications, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 10

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 107 (C.D. Cal. 2023) ....................9

*Hill v. National Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ....................12

*Howard v. L.A. Cnty. Metro. Transp. Auth.*,
Case No. CV 20-7876, 2020 WL 8816533 (C.D. Ca. Dec. 15, 2020).................... 13-14

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................9

*Kight v. CashCall, Inc.*,
231 Cal.App.4th 112 (2014) ....................14

*L.B. v. LinkedIn Corp.*,
Case No. 5:24-cv-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ....................8

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) ....................6

*Nichols v. Peacehealth Networks on Demand LLC*,
Case No. 2:25-cv-01831, 2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ....................15

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .................... 12-13

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................7

*Rainey v. A Place for Rover, Inc.*,
Case No. 2:22-cv-00403, 2022 WL 16942849 (C.D. Cal. July 18, 2022)....................7

*Regan v. Pinger, Inc.*,
No. 20-cv-02221, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021) ....................7

*Sarhadi v. Pear Health Labs, Inc.*,
No. 24-cv-07921, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025)....................7

*Sheski v. Shopify (USA) Inc.*,
No. 19-cv-06858, 2020 WL 2474421 (N.D. Cal. May 13, 2020)....................13

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) ....................2

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) *aff'd* 745 Fed. Appx. (9th Cir. 2018)....................11

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................12

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Zaimi v. Neiman Marcus Grp. LLC*,
No. 22-cv-02972, 2022 WL 19569536 (C.D. Cal. Aug. 31, 2022) ..........7

*Zocco v. Nelnet, Inc.*,
Case No. 25-cv-04470, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ..........15

**Statutes**

18 U.S.C. § 2511(2)(d) ..........14

Cal. Penal Code § 631 ..........9, 10

Cal. Penal Code § 632 ..........13, 14

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

## I. INTRODUCTION

Plaintiff's Opposition ignores a fundamental defect: Plaintiff expressly consented to the collection and sharing of her personal information. Such consent defeats any claim that Musely engaged in unauthorized interception or recording under CIPA. Where, as here, the alleged conduct falls squarely within the scope of disclosures to which Plaintiff agreed, courts consistently reject attempts to recast routine, disclosed data practices as statutory violations. Because Plaintiff cannot plausibly allege the absence of consent or any unlawful conduct, Plaintiff's claims fail as a matter of law and the Amended Complaint should be dismissed with prejudice.

Alternatively, Plaintiff's Opposition to Musely's motion to dismiss—much like her Amended Complaint—is simply peppered with legal buzzwords. Her repeated references to terms such as "tracking," "sharing," "intercept," and "sensitive information," however, are not backed up with any substance. To survive a motion to dismiss, a complaint must contain sufficient *factual matter* to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009); *see also In re Guidant Corp. Implantable Defibrillators Litig.*, MDL No. 05-1708, 2009 WL 1921902 (D. Minn. July 1, 2009) ("The use of buzzwords, coupled with only vague and conclusory allegations, is insufficient to withstand a motion to dismiss, especially in light of *[Iqbal and Twombly]*."). Because Plaintiff's Amended Complaint fails to set forth sufficient *facts* establishing any claims against Musely upon which relief may be granted, dismissal of all claims against Musely is warranted.

## II. ARGUMENT IN REPLY

### A. Plaintiff's Consent to Disclosure of Her Personal Information Bars Her Claims

#### 1. Musely's Notice of its Privacy Policy is Reasonably Conspicuous

In arguing that the Musely Website was not reasonably conspicuous, Plaintiff relies solely on three distinguishable cases. Indeed, when the Musely Website and the websites at issue in those cases are viewed side by side, it is clear that the Musely Website provided reasonably conspicuous notice that Plaintiff was consenting to disclosure of her personal

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

information.

Plaintiff first relies on the Ninth Circuit's holding in *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022). There, the Ninth Circuit affirmed the trial court's denial of a motion to compel arbitration, finding that the website did not provide reasonably conspicuous notice of its terms. Specifically, the court found that the font was "*considerably smaller* than the font used in the surrounding website elements" and "in a font so small that it is *barely legible* to the naked eye." *Id.* at 856 (emphasis added). Moreover, the website contained "other visual elements" which drew "the user's attention away from the barely readable critical text." *Id.*

The below comparison of the highlighted relevant language on the Musely webpage and the *Berman* webpage underscores the differences. The contractual language on the *Berman* webpage is tiny and essentially illegible. By contrast, the font used in the disclosure on the Musely Website is legible, and similar to, and certainly not dwarfed by, the immediately adjacent text. While the font is "smaller than some of the other text on the page . . . [i]t is conspicuously displayed with clear unambiguous language directly above" the Create Account button. *See Singh v. Adobe Inc.* 797 F. Supp. 3d 1038, 1048-49 (N.D. Cal. 2025).




Frey Decl. at ¶ 2, Doc. 57; Ex. 1 at Doc. 57-1. This is quite different than the text of the *Berman* webpage, which essentially requires a magnifying glass to read:







*Berman*, 30 F.4th at 860, 861 (Appendix A, B).

Plaintiff also relies on *Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025), which is equally distinguishable and unavailing. There, the plaintiff purchased a <u>trial</u> subscription for fitness classes through the defendant's website. The Ninth Circuit affirmed the trial court's denial of the defendant's motion to compel arbitration, finding that "the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color" was "deemphasized by the overall design of the webpage" and not "prominently displayed." *Id.* at 1157. Moreover, the landing page contained "**no language** indicating that a subscription is governed by any additional terms or conditions not listed on the page" and the consent language was located <u>below</u> a field asking if the user had received a gift card and in the "**same small font**." *Id.* at 1152 (emphasis added). Users were not required to create a username or password to make and account and were "advised that they are 'never locked in,' that there are 'no commitments,' and that they can 'cancel anytime.'" *Id.* at 1155.

Again, this is quite different from the Musely Website, which advises that users must "Create an account to talk with your doctor." Frey Decl. at ¶ 2, Doc. 57; Ex. 1 at Doc. 57-1.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Furthermore, unlike the *Chabolla* website, Musely users must provide an email address and password to create an account. *Id.* Unlike the *Chabolla* website, the consent language on the Musely webpage is located directly above the "Create Account" button. *Id.* Again, the differences are striking when compared side by side:




*Id.*



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

*Chabolla*, 129 F.4th at 1166. Plaintiff argues that "the presence of a larger bright picture taking up the majority of the page" on the Musely Website is similar to the layout of the *Chabolla* webpage. However, as shown above, while the picture on the Musely Website is only on one side of the webpage, the Sign Up section is completely unencumbered by any pictures. The picture on the *Chabolla* webpage, however, surrounds the language.

Finally, Plaintiff relies on *Godun v. JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025). There, the Ninth Circuit found notice to be insufficient because "the advisal text is printed in relatively small text and not located 'directly above or below' the action ('Start my trial') button." *Id.* at 711. Moreover, "the color of the advisal text blend[ed] into the background and [was] displayed in a lighter color than other text on the page." *Id.* The court found the "gray-on-gray presentation . . inconspicuous" such that a reasonable internet user's attention would not be drawn to it. *Id.* The Musely webpage, by contrast, contains gray font against a white background. Frey Decl. ¶ 2, Doc. 57; Ex. 1, Doc. 57-1. Again, the differences between the Musely Website and *Godun* webpage are striking when compared side by side:




Frey Decl. ¶ 2, Doc. 57; Ex. 1, Doc. 57-1.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101




*Godun*, 135 F.4th at 705.

When the overall design of the Musely Website is evaluated—as it must—it is clear that Musely's notice of its Privacy Policy is reasonably conspicuous and similar to the notices found sufficient by numerous courts in this district and other federal district courts in California, as discussed in Musely's opening brief. Doc. 55 at p. 10.

**2. Plaintiff Unambiguously Manifested Her Assent**

Plaintiff argues that she did not manifest assent to the Privacy Policy because the advisal language which references "signing up" does not match the "Create Account" action button. Opp. at p. 8. Courts have consistently rejected this argument.

In *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1074 (C.D. Cal. 2023), the court rejected the plaintiff's argument that a mismatch in language between "Continue" and "signing up" invalidated the plaintiff's assent to the website's terms. The court found that the webpage made "the assent-manifesting action clear—signing up or signing in—and clicking the continue button

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

is a way to complete that action." *Id.* at 1075; *see also Zaimi v. Neiman Marcus Grp., LLC*, No. 22-cv-02972, 2022 WL 19569536, at *3 (C.D. Cal. Aug. 31, 2022) (finding mutual assent where the disclaimer reads "[b]y continuing" and the button reads "Sign in & Checkout"); *Rainey v. A Place for Rover, Inc.*, Case No. 2:22-cv-00403, 2022 WL 16942849, at *1 (C.D. Cal. July 18, 2022) (finding mutual assent where the disclaimer reads "By signing in or signing up" and one button reads "Continue with Google"); *Regan v. Pinger, Inc.*, No. 20-cv-02221, 2021 WL 706465, at *8 (N.D. Cal. Feb. 23, 2021) (finding mutual assent where the disclaimer reads "By registering" and the button reads "Create Account"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (finding mutual assent where the disclaimer reads "by creating an Uber account" and the button reads "Register").

Once again, Plaintiff's reliance on *Chabolla* is misplaced. There, the language provided that "[b]y signing up you agree to our Terms of Use and Privacy Policy," however, there is no "sign up" button, only a button that reads "Continue." 129 F.4th at 1158. Here, while the action button states "Create Account," the top of the webpage states "**Sign Up**" in bolded text. Frey Decl. at ¶ 2, Doc. 57; Ex. 1, Doc. 57-1. Moreover, to create the account, Plaintiff was required to enter her first name, last name, mail, and password and agreed that "By signing up, [she] agree[d] to Musely's Privacy Policy and Terms of Use." *Id.* By doing so, Plaintiff "manifested [her] assent . . . creating an enforceable sign-in wrap agreement." *Sarhadi v. Pear Health Labs, Inc.*, No. 24-cv-07921, 2025 WL 1350033, at *8 (N.D. Cal. Apr. 18, 2025)

### 3. The Privacy Policy Disclosed the Activity at Issue

Plaintiff argues that the Privacy Policy does not cover the information shared, and may have conveyed the opposite impression. Opp. at p. 9, Doc. 60. Not so.

As set forth in Musely's Opening Brief, the Privacy Notice could not be clearer as to the type of information that Musely collects, which includes "Personal Information" including "medical conditions," "medical concerns," "treatment," prescription products for those conditions, and "physical condition," *the very same information Plaintiff claims was improperly intercepted here*. The Privacy Policy further provides that this Personal Information may be disclosed to various third parties including social media, analytics providers, and other third

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

party marketing service providers. Doc. 57-2 at p. 14.

Nonetheless, Plaintiff argues that the Court should ignore this transparent representation of what is collected because the policy also states that personal information does not include medical information covered by HIPAA and the CMIA. Opp. at p. 9, Doc. 60. Plaintiff does not, however, offer any authority to support a conclusion that the information Musely discloses it collects constitutes such health or medical information.[1] Simply calling something protected health information does not make it so and does not satisfy *Twombly*'s pleading standards.

Plaintiff's reliance on *L.B. v. LinkedIn Corp.*, Case No. 5:24-cv-06832, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) is misleadingly selective. There, this Court found that while LinkedIn disclosed that it would collect data from third-party websites, it did not specifically disclose the type of information at issue in that case, namely information related to fertility treatments. *Id.* at *5-*7. As to the fertility clinic, however, this Court found that its "terms [were] so specific that there can be no reasonable expectation that the information provided to [the clinic] is private." *Id.* *11. The fertility clinic's privacy policy was remarkably similar to Musely's Privacy Policy, identifying specific categories of personal information that may be disclosed to third parties. *Id.*

In analyzing whether a privacy policy disclosed the activity at issue, the court must look to how a reasonable user would understand the privacy policy. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1149 (9th Cir. 2024). Moreover, privacy policy sections cannot be read in a vacuum. *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) (privacy policy "must be read in context and construed as a whole"). A reasonable user would review the totality of Musely's Privacy Policy and understand that Musely collects personal information—including health information—and may disclose this personal information to third party service providers that provide support functions to Musely.

---

[1] HIPAA "does not protect all health information wherever it is found." *Haage v. Zavala*, 158 N.E.3d 1171, 1187 (Ill. App. 2020).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

**B. The Amended Complaint Fails to Sufficiently Plead Violation of CIPA Section 631**

Because CIPA is a criminal statute, it is to be "narrowly construed" and the "rule of lenity" should be applied in resolving any ambiguity. *Doe v. Eating Recovery Ctr. LLC ("Eating Recovery Ctr.")*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. Oct. 17, 2025) ("courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation"). With that guidance, it is clear Plaintiff has failed to establish an entitlement to recovery under Section 631.

**1. Plaintiff Fails to Sufficiently Allege the Requisite Intent**

Plaintiff does not dispute that she is required to allege intent. Rather, she argues that there is "no doubt" Musely knew what Meta and TikTok were doing because Musely allegedly received a letter from the U.S. Department of Health and Human Services, Office of Civil Rights generally discussing "Use of Online Tracking Technologies." Opp. at p. 11, Doc. 60. These allegations, even assuming they are true, fail to sufficiently allege the requisite intent required to demonstrate a CIPA violation.

At the outset, "[t]here is nothing inherently unlawful" with third parties offering source code to health care providers. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024). It follows that receiving some non-specific information concerning use of online trackers is insufficient to demonstrate that Musely "*knew* [Meta and TikTok] intended to commit the crime and *intended* to aid and abet [Meta and TikTok] in the crime." *Esparza v. UAG Escondido A1 Inc.*, Case No. 23cv0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (emphasis in original). Simply using online tracking technologies is insufficient to establish scienter. *Heiting v. Taro Pharms. USA, Inc*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023).

Plaintiff cites *James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) to support her argument that she has adequately alleged intent. Plaintiff misunderstands the holding in *James*. While this Court held it could reasonably be inferred that a party contracted with a vendor to collect information from website users for the *party's own benefit*, it could not be reasonably inferred that the party "knew [the vendor] would intercept for the benefit of a company other than" the party. *Id.* at 954. This Court dismissed the plaintiff's CIPA claim. As

such, *James* actually supports the argument that Plaintiff has failed to adequately allege facts that Musely had the requisite knowledge or intent to support a Section 631(a) claim.

**2. The Court Should Apply the Vendor Exception**

As Musely acknowledged in its Opening Brief, there is a "split among courts regarding . . . communications between internet users and developers of websites who track or record user data," with some courts considering "a software developers' *intentions* with respect to the use of the collected information" and others considering "whether a developer has the *capability* to sue the information for any purpose other than to furnish the communications to the website owner." *Heerde v. Learfield Communications, LLC*, 741 F. Supp. 3d 849, 860 (C.D. Cal. 2024) (emphasis in original). For the reasons set forth in Musley's Opening Brief, this Court should follow the holdings of those courts that have held vendors such as Facebook and TikTok are not third parties.

Regardless, however, Plaintiff cites to various allegations in her Amended Complaint to support her argument that she has sufficiently pleaded that Facebook and TikTok are third parties. Opp. at p. 12, Doc. 60. Completely absent from the Amended Complaint, however, are any plausible allegations that Musely used Facebook and TikTok as anything more than a "tool . . . that allow[ed] [it] to record and analyze its own data in aid of [Musely's] business," which cannot support aiding and abetting liability. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). Indeed, Plaintiff concedes that the Facebook Tracking Pixel and TikTok Pixel are "tools." *See, e.g.*, Doc. 49 at ¶¶ 24-30, 42, 46.

**3. Plaintiff's Conclusory Allegations Do Not Establish Interception of Contents of Communications "While In Transit"**

In arguing she has adequately pleaded her communications were intercepted "in transit," Plaintiff cites to various boilerplate and conclusory allegations that she claims "sufficiently alleges the interception of communications in-transit." Opp. at p. 14, Doc. 60. Allegations concerning *how* something works do not equate to sufficient allegations establishing a statutory violation.

Moreover, even accepting Plaintiff's conclusory allegations that the "Facebook Tracking



Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Pixel causes the browser to secretly and contemporaneously duplicate the communication with a website transmitting to Meta's servers, alongside additional information that transcribes the communication's content and the individual's identity" Doc. 60 at ¶ 66, as true, this is not enough. This Court has adopted a narrow reading of "in transit." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1119 (noting that "using a third-party company to perform data analytics is worlds different from wiretapping and eavesdropping"). Facebook "must do something more than just intercept the communication while it is in transit to be held liable." *Id.* Plaintiff does not allege anything more and in fact, concedes that is only "**[a]fter**" information is collected that "Meta processed it, analyzed it, and assimilated it into datasets." Doc. 60 at ¶ 39 (emphasis added). "A filtering process that simply sorts out certain data—which may be better analogized to sorting mail than to reading it—can't fairly be characterized an effort of understanding the meaning of the communication." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117. Such process "indisputably takes place after the communication has already traveled from the website visitor to the website operator" and thus, does not support liability under Section 631(a). *Id.*

### C. Plaintiff Fails to Allege Disclosure of Substantive Medical Information

The information alleged by Plaintiff to constitute CMIA medical information is essentially web browsing data involving URLs of publicly accessible webpages with general discussions of health issues. Opp. at p. 15, Doc. 60. URLs, however, are not medical information. Indeed, "[n]othing about the URLs, or the content of the pages located at those URLs, relates to the 'past, present, or future physical or mental health or condition of an individual.'" *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (emphasis in original), *aff'd* 745 Fed. Appx. 8, 9 (9th Cir. 2018) (holding "[i]nformation available on publicly accessible websites stands in stark contrast to . . . personally identifiable patient records and medical histories . . . information that unequivocally provides a window into an individual's medical history"). The CMIA's definition of "medical information" cannot be stretched so far as to include URLs of publicly accessible webpages.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

The fact that plaintiff sought treatment for dermatological conditions does not constitute substantive medical information within the meaning of the CMIA. Accordingly, Plaintiff has not identified any substantive medical information that may serve as the subject of her CMIA claim.

**D. Plaintiff Had No Reasonable Expectation of Privacy and Cannot Seek Recovery Under the California Constitution**

Plaintiff's Opposition focuses primarily on her claim that she has a significant privacy interest in her "sensitive health information." Opp. at p. 17, Doc. 60. The right of privacy afforded by the California Constitution, however, only protects an individual's *reasonable expectation* of privacy against a serious invasion. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 36-37 (1994). Because Plaintiff has failed to establish she had a *reasonable expectation* of privacy, she cannot recover.

Courts considering whether there is a reasonable expectation of privacy "must take into account any accepted community norms," including the "customs, practices, and physical settings surrounding particular activities" as well as "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests." *Id.* Moreover, a plaintiff seeking to recover for an alleged invasion of privacy "must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014); *see also Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (where "voluntary consent is present, a defendant's conduct will rarely be deemed highly offensive to a reasonable person") (citation omitted).

Here, Plaintiff *voluntarily* provided the information in question while on notice of its collection, and, as such, manifested her consent to the collection of this information. Plaintiff was on notice that the information at issue may be collected when she engaged in the purported communication with Musely's website. As discussed above, she agreed that by signing up, she agreed to Musely's Privacy Policy, which explicitly discloses that it collects certain personal information—including medical conditions—and that this personal information may be provided to third parties. Frey Decl. at Ex. 2 at pp. 11-12, Doc. 57-2.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

There can be no reasonable expectation of privacy in information that is voluntarily shared, where, as here, the information was collected only for Musely's use and was used for only the purposes Musely disclosed. *See, e.g., Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858, 2020 WL 2474421, at *6 (N.D. Cal. May 13, 2020) (even voluntarily supplying information that is then used for purposes *beyond* what was expected when the information was supplied "does not rise to the level of being 'highly offensive to a reasonable person'" (citation omitted)); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198-99 (N.D. Cal. 2019) (dismissing invasion of privacy claims because Google's "profile" of a user was "only as specific as their" voluntary "use of Google services"); *Opperman*, 205 F. Supp. 3d at 1072 ("[A] plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion."). Here, Plaintiff *voluntarily* interacted with and provided information to Musely, after receiving notice that by signing up and creating an account, she assented to the Privacy Policy. As such, she had no reasonable expectation of privacy and cannot recover under the California Constitution.

### E. Plaintiff's Section 632 Claim Fails as a Matter of Law

#### 1. Plaintiff Does Not Allege that Musely Eavesdropped on Her Communications

Plaintiff's Opposition fails to overcome Musely's showing that Plaintiff's Section 632 claim must be dismissed. Plaintiff's three sentence response simply states that Musely is liable under Section 632 because it loaded trackers onto its website for the purpose of profiting from targeted advertising. Opp. at p. 18, Doc. 60. Section 632, however, only "creates liability for anyone who eavesdrops upon or records a confidential communication without the consent of all parties to the communication." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1114 n.4. As discussed in Musely's Opening Brief, Plaintiff does not allege that *Musely* eavesdropped on her communications, but, rather, that she expected her communications to be *confined to Musely*. Plaintiff also does not dispute the absence of any language in Section 632 permitting a claim based on derivative liability or address Musely's arguments that she failed to adequately allege derivative liability. *See Howard v. L.A. Cnty. Metro. Transp. Auth.*, Case No. CV 20-7876, 2020

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

WL 8816533, at * 3 (C.D. Cal. Dec. 15, 2020) (plaintiff conceded argument by failing to address in opposition).

**2. Plaintiff's Voluntary Internet Communications Were Not Confidential.**

Plaintiff does not contest that California does not recognize a general expectation of privacy regarding internet communications. Opp. at p. 18, Doc. 60. Nor does Plaintiff set forth any "unique, definite circumstances" to rebut against the presumption against online confidentiality. *Id.* Instead, Plaintiff simply argues that the information is protected health information. Plaintiff offers no authority holding that health information provided on a public website is per se confidential under Section 632.

Furthermore, whether a communication is confidential is based on "the surrounding circumstances," including "the party's own conduct." *Kight v. CashCall, Inc.*, 231 Cal.App.4th 112, 133 (2014). As discussed above, Plaintiff had reasonably conspicuous notice of Musely's Privacy Policy and by continuing to utilize the Website after being presented with that policy, she consented to the challenged conduct and had no reasonable expectation her voluntarily provided information would be kept confidential

**F. The Amended Complaint Fails to Plead Sufficient Facts Supporting an Inference that Musely's Primary Motive was an Independent Criminal Act**

Plaintiff does not dispute that the Electronic Communications Privacy Act (ECPA) is a one-party consent statute such that there can be no liability where one of the parties has given consent prior to the interception. *See* 18 U.S.C. § 2511(2)(d). Instead, Plaintiff attempts to save her ECPA claim from inevitable dismissal by relying on the crime-tort exception. Opp. at p. 19, Doc. 60. Because Plaintiff has failed to sufficiently plead facts establishing Musely's *primary motive* was an *independent* criminal act, her claim cannot be revived.

Curiously, while the Amended Complaint alleges that Musely's use of Facebook Pixel violated HIPAA, her Opposition does not. The likely reason for this is this Court's recent holding in *Doe v. Talkiatry Mgmt. Svcs., LLC ("Talkiatry Mgmt."),* __ F. Supp. 3d __, No. 5:25-cv-00781, 2026 WL 206483, at *3 (C.D. Cal. Jan. 22, 2026) rejecting reliance on alleged HIPAA

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

violations failed to invoke the crime-tort exception. Plaintiff Opposition does not respond to Musely's reliance on *Talkiatry Mgmt.*

Instead, Plaintiff claims that she has sufficiently alleged the crime-tort exception through allegations that when an individual's browser sends a GET request to Musely's server, "Meta immediately views and processes the information and adds it to advertising data sets" and that Meta and other third parties used Plaintiff's "sensitive personal and health information for its own purposes, including for targeted advertising." Opp. at p. 20, Doc. 60 (citing Doc. 49 at ¶¶ 66, 128). In other words, Plaintiff alleges the crime-tort exception applies because Musely engaged in an illegal interception of health to bolster its own advertising and gain a benefit. "More is needed." *Zocco v. Nelnet, Inc.*, Case No. 25-cv-04470, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) (finding plaintiff's allegation that defendant used tracking technology for financial gain insufficient to invoke crime-tort exception); *Nichols v. Peacehealth Networks on Demand LLC*, Case No. 2:25-cv-01831, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026) (declining to apply crime-tort exceptions to allegations that defendant's disclosure of information for targeted advertising purposes was unlawful).

Plaintiff's boilerplate, conclusory allegations that Musely utilized pixels for the purpose of "committing a criminal or tortious act" and "invading . . . privacy" fall short of the requirement of "plead[ing] sufficient facts" to support a finding that Musely's primary purpose was violating HIPAA or invading Plaintiff's privacy." *Talkiatry Mgmt.* 2026 WL 206483, at *2.

## III. CONCLUSION

For all the reasons set forth above, Defendant Trusper, Inc. d/b/a Musely respectfully requests that this Honorable Court grant its Motion to Dismiss and enter an order dismissing all claims against it with prejudice.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101

Respectfully submitted,

Dated: April 20, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *Sara Anderson Frey*
Timothy K. Branson
Sara Anderson Frey (pro hac vice)
Attorneys for Defendant
TRUSPER, INC. D/B/A MUSELY